JOHN N. SMITH, Respondent, *v.* DAVID C. REID, Appellant.

Notice in some form to an infant is essential to confer jurisdiction upon a court to bind his property, and while the legislature may prescribe that the notice may be constructive instead of actual, proceedings must be in conformity with the statute in order to be valid and bind the infant.

To authorize the appointment of a guardian *ad litem* for an infant defendant the moving papers must set forth the facts conferring upon the court authority to make the order; and so, under the provisions of the Code of Civil Procedure (§ 473), authorizing the court, where an infant defendant residing in the state is temporarily absent therefrom, to make an order appointing a guardian *ad litem*, and providing that the summons may be served upon such guardian, to authorize the appointment, the moving papers must show the temporary absence of the infant.

A recital in a judgment record of service of summons in an action upon an infant defendant, while *prima facie*, is not conclusive evidence of the fact, as against such defendant, and he is at liberty to show that the service was not in fact made.

An order forming part of a judgment-roll provided that certain infants be brought in and made parties defendant, and appointed a guardian *ad litem* for them unless they procured such appointment. The other papers showed that no guardian was appointed on application of the infants; that a supplementary summons was issued as prescribed by the Code of Civil Procedure (§ 453), which was served on the guardian named in the order. There was no proof of service on the infants; said guardian answered on their behalf. *Held*, that the record permitted the inference that the only service was upon the guardian, and authorized a finding to that effect, although the record recited that said defendants were served.

A judgment creditor cannot be deprived of his legal right to enforce collection of his judgment against the lands of his debtor by a fraudulent conveyance thereof prior to the entry of judgment, nor can he by such a conveyance be forced to pursue an equitable remedy for the collection of his debt instead of a legal one.

Notwithstanding the fraudulent conveyance, while the title remains in the fraudulent grantee the lien of the judgment remains, the judgment creditor may sell the land under execution on his judgment, and the purchaser may impeach the conveyance in a suit at law to recover possession, or, if he can gain possession, defend the title thus acquired against the fraudulent grantee or those claiming under him.

Such a purchaser in possession may invoke the aid of a court of equity to remove the apparent cloud on his title caused by the fraudulent conveyance, and to have it discharged from the record, when its invalidity does not appear upon its face.

This is a continuing right which exists as long as there is occasion for its exercise; and so, it is never barred by the Statute of Limitations.

While the purchaser is so in possession, claiming title under the sheriff's deed, one taking a conveyance from the fraudulent grantee cannot claim as a *bona fide* purchaser.

A voluntary conveyance by one indebted at the time is presumptively fraudulent. (FOLLETT, Ch. J., and PARKER, J., dissenting.)

The fact that a conveyance shows upon its face that it was voluntary does not alone prevent a party from maintaining an action to set it aside as a cloud on his title. The conveyance cannot be judged fraudulent solely upon the ground that it was voluntary (2 R. S. 137, § 4), and extrinsic evidence is necessary to show an existing indebtedness of the grantor at the time of its execution.

In an action by a purchaser on execution sale to set aside two conveyances, made without consideration; one by the debtor to a third person, and one by the latter to the debtor's wife, the indebtedness existing at the time of the conveyances was shown; also, that judgments were subsequently recovered thereon and executions issued which were returned unsatisfied. *Held* (FOLLETT, Ch. J., and PARKER, JJ., dissenting), that the evidence was sufficient to establish the fraudulent character of the transaction.

(Argued June 16, 1892; decided October 1, 1892.)

APPEAL from order of the General Term of the City Court of Brooklyn, made October 28, 1890, which reversed a judgment in favor of defendant entered upon a decision of the court on trial at Special Term and granted a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Horace Graves* for appellant.

*H. C. M. Ingraham* for respondent.

BROWN, J. The purpose of this action was to have certain deeds, under which the defendant claimed to be the owner of an undivided interest in the lands described in the complaint, declared to be a cloud upon the plaintiff's title and to have the same adjudged void and illegal.

There is no dispute as to the facts of the case and, excepting the possession by plaintiff of the property in question,

they appear by admission in the pleadings or from records introduced in evidence upon the trial by the plaintiff.

The defendant makes his title through a deed from Carrie Lowitz, one of the devisees of the land under the last will and testament of her mother, Caroline Taylor.

Mrs. Taylor's title was derived from her husband, William H. Taylor, who is admitted to have been the owner of the property on November 20, 1874. On that day he conveyed it to one Chauncey M. Felt, who immediately conveyed to Mrs. Taylor.

The plaintiff derived his title through a sheriff's deed, executed pursuant to a sale under an execution issued upon a judgment recovered against William H. Taylor, by the Nassau Bank of New York city, on April 9, 1875, and docketed in Kings county on the following day.

The plaintiff's contention is and such was the allegation of the complaint that said deeds from Taylor to Felt and from Felt to Mrs. Taylor were without consideration and were made with intent to hinder, delay and defraud said bank, and were fraudulent and void.

The sale by the sheriff was on December 20, 1880, and the execution under which it was made was issued October 9, 1880, pursuant to an order of the Supreme Court and a decree of the Surrogate's Court of Kings county, Mr. and Mrs. Taylor prior to that date having both died.

This action was commenced in January, 1890. The answer put in issue the plaintiff's title, alleged the validity of defendant's title, and pleaded the Statute of Limitations. From this statement it is apparent that the defendant showed a clear paper title to the share in the land claimed by him, and it was incumbent upon the plaintiff and essential to his recovery to establish his allegation that the deeds which conveyed Taylor's title to his wife were fraudulent and void as against the Nassau Bank, through whose judgment he claimed. To establish the fraudulent character of that conveyance, plaintiff put in evidence a judgment-roll in an action originally commenced by said bank against Mr. and Mrs. Taylor and Chauncey Felt to have said deeds set aside.

That action was commenced in October, 1875, but before .it was brought to trial Mr. and Mrs. Taylor died, and in February, 1878, it was revived against the three children of Mrs. Taylor, who were devisees under their mother's will. At that time, as it appears from the moving papers, Carrie Taylor, the defendant's grantor, who was the eldest child, was about seventeen years of age, and all of the children resided in the city of Brooklyn.

A judgment was subsequently entered in that action adjudging said deeds to be void on the ground that they had been executed with intent to defraud the creditors of said William H. Taylor, and that the land therein described was bound by the lien of the judgment recovered against said Taylor by the Nassau Bank, and granting leave to said bank to proceed upon execution theretofore or thereafter to be issued upon the judgment, and sell said land in satisfaction thereof.

This judgment was conclusive upon the defendant as to the fraudulent character of the conveyance from Taylor to his wife, providing the court rendering it acquired jurisdiction of the person of the infant defendants therein, and whether or not it did acquire such jurisdiction was the crucial question presented upon the trial upon this branch of the case.

The trial court found that the infant defendants were not served with the summons, but that a guardian *ad litem* was appointed and answered for them without service of the summons, and that the judgment rendered therein as against said infants was void.

The judgment contained a recital that said infants had been served with the supplementary summons in the action on March 11, 1878, and such recital was *prima facie* evidence of the truth of that fact. But it was not conclusive, and the defendant was at liberty to show that service of the summons was not in fact made. (*Potter* v. *Merch. Bank*, 28 N. Y. 641; *Bosworth* v. *Vandewalker*, 53 id. 597; *Ferguson* v. *Crawford*, 70 id. 253.)

No oral evidence was offered upon the question, but the

appellant claims that the finding of the trial court is sustained by the inferences necessarily drawn from the papers comprising the judgment-roll, and with this conclusion we agree.

The order making said infants parties to the action was granted February 23, 1878. It provided that they be brought in and made party defendants, " and appointed Alexander Cameron, Esq., a guardian *ad litem* for them, unless they should procure the appointment of a guardian within ten days after the service on them of copies of the order.

The order appears to have been served on February twenty-seventh and no guardian was thereafter appointed on the application of the infants. A supplementary summons dated March eleventh was issued pursuant to section 453, Code C. P., and upon that day was served upon Mr. Cameron, who thereafter answered in behalf of the infants.

This evidence permits the inference that the only service was on the guardian. No reason is apparent why the summons should have been served upon him if prior or subsequent to March eleventh it was served upon the infants. It is also apparent that the guardian acted under the appointment contained in the order of February twenty-third. This negatives the idea of service on the infants after that date, and as the summons was not issued until March eleventh no service could have been made before it. Jurisdiction over the infant defendants, therefore, if acquired at all, must rest upon the validity of the order of February twenty-third. Section 473 of the Code of Civil Procedure, to which we are cited by the respondent, provides in substance that when an infant defendant resides in this state and is temporarily absent therefrom, the court may in its discretion make an order designating a person to be his guardian *ad litem*, unless he or some one in his behalf procures such a guardian to be appointed within a specified time after service of a copy of the order, and that in such case the summons may be served by delivering a copy to the guardian so appointed, with like effect as when a summons is served without the state upon an adult defendant pursuant to an order for that purpose.

It is claimed that the order of February twenty-third and the service upon the guardian was a valid service of the summons under this section. Service of process upon the infants was not essential to confer jurisdiction, and if the order was properly granted and served under the section quoted service upon the guardian was equivalent to personal service upon the infant. (*Schell* v. *Cohen*, 55 Hun, 207.)

Notice in some form to an infant is essential to confer jurisdiction upon a court to bind his property. But the legislature may prescribe that it be constructive instead of actual, and proceedings in conformity with such a statute will be valid and bind the infant. (*Ingersoll* v. *Mangam*, 84 N. Y. 622; *Croghan* v. *Livingston*, 17 id. 218; *Gotendorf* v. *Goldschmidt*, 83 id. 110.)

Section 473 covers a case in which personal service cannot be made and which is not within the provisions of the Code relating to service by publication.

But the difficulty of upholding the jurisdiction of the court to render the judgment against the infants under the order of February twenty-third, and the service on the guardian is that the moving papers upon which the order was made do not make a case within section 473. That section permits service of the summons to be made upon the guardian *ad litem* with like effect as if made on the infant, but unless the court had jurisdiction to appoint the guardian the service was wholly ineffectual. To authorize the appointment of a guardian *ad litem* for an infant defendant the moving papers should set forth the facts conferring authority upon the court to make the order. (*Grant* v. *Van Schoonhoven*, 9 Paige Ch. 255.)

The petition of the Nassau Bank, upon which the order of February 23, 1878, was made, contains no statement that any of the infant defendants were temporarily absent from the state. It states the age of all of them and that they were "residing at 184 Clinton avenue, in the city of Brooklyn."

The petition was dated February thirteenth. Copies of the order granted therein were served personally on all the infants

at 184 Clinton avenue, on February twenty-seventh, four days after it was granted.

There could be no presumption of absence between those dates and existing on February twenty-third. Moreover, neither the petition nor the order to show cause upon which the motion was made asked for the appointment of a guardian *ad litem* for Carrie Taylor, or that she be made a defendant in the action.

The theory of the plaintiff, as appears from the petition referred to, was that Carrie Taylor was not a necessary party to the action. The petition alleges that James Cleland was her general guardian, but that there was no general guardian for the other two infants. It then prays that Cleland, as the general guardian, be made a defendant, and that a guardian *ad litem* be appointed for Demetrius Taylor and Henrietta Taylor, the other children of Caroline Taylor, deceased. And there is proof of service of the petition on Cleland as general guardian, and on the infants Demetrius and Henrietta, but none on Carrie Taylor.

The order granted was broader than the prayer of the petition and made Carrie Taylor a defendant in the action; and while it was undoubtedly within the power of the court to make her a party upon an *ex parte* application, there was no jurisdiction to appoint for her a guardian *ad litem* and provide for a substituted service of the supplemental summons upon him in the absence of proof of the essential fact that she was temporarily absent from the state.

The recital contained in the judgment to the effect that Carrie Taylor had been served with the supplemental summons on March 11, 1878, in view of the facts appearing from the papers in the judgment-roll, from which I have quoted, is not sufficient to sustain in the jurisdiction of the court to render the judgment. It appears very clear, we think, from an inspection of the roll, and also from other recitals of the judgment, that the service which it is there recited was made, was not personal, but was upon the guardian *ad litem*, and that his appointment was void from lack of proof of the facts

essential to the jurisdiction of the court to make it. The finding of the trial court, therefore, that the infants were not served with the summons, and that the judgment setting aside the conveyance of the property from Taylor to his wife was, as to said infants, void, was fully sustained by the evidence.

The respondent, however, contends that the evidence in the case, independent of the judgment in the action brought to set aside said deeds, was sufficient to establish the fraudulent character of those conveyances, and that the trial court should have so found.

The reversal of the General Term was upon the facts as well as the law, and the whole case is, therefore, before us for review.

The evidence upon this question is that the conveyances referred to were quit-claim deeds expressing a nominal consideration of one dollar, and that at the time of their execution and delivery William H. Taylor was indebted to the Nassau Bank upon a promissory note of twenty-three hundred dollars, and to the Germania Bank upon a promissory note of two thousand dollars, both of which notes were overdue.

That subsequent to such conveyances judgments were recovered upon said notes against said Taylor, and execution was issued thereon in Kings county and returned wholly unsatisfied.

Our statute (2 R. S. p. 137, § 4) provides that the fraudulent intent to hinder, delay and defraud creditors by a conveyance of land shall be deemed a question of fact and not of law, and that no conveyance shall be judged fraudulent as against creditors solely upon the ground that it was not founded upon a valuable consideration. But the rule is well settled that a voluntary conveyance by one indebted at the time is presumptively fraudulent. (*Seward* v. *Jackson*, 8 Cow. 406; *Erickson* v. *Quinn*, 47 N. Y. 410; *Dunlap* v. *Hawkins*, 59 id. 346; *Cole* v. *Tyler*, 65 id. 78.)

There was no evidence introduced by the defendant upon this question, and we are of the opinion that the facts stated

raised a presumption that the deeds were executed by Taylor with intent to defraud his creditors, and in the absence of any explanation thereof it was the duty of the court to have determined the fact of the grantee's intention in accordance with such presumption. (*Coleman* v. *Burr*, 93 N. Y. 17–31.)

Having established the fact of the fraudulent character of the conveyances from Taylor to his wife, the plaintiff was entitled to a judgment adjudging the defendant's deed to be a cloud upon his title and illegal and void.

The plaintiff makes his title through the sale under the execution issued upon the judgment obtained by the Nassau Bank upon the promissory note held by it, and it was not at all essential that the conveyances from Taylor to his wife should have been adjudged fraudulent and void before that execution was issued.

The trial court found upon plaintiff's request that the execution was duly issued to the sheriff of Kings county, and that the order of the Supreme Court and the decree of the Surrogate's Court granting leave that it issue were duly made.

No question was of course raised at the General Term upon the plaintiff's appeal that these findings did not have support in the evidence, and they are conclusive upon the appellant here. The point taken at the General Term that the execution could not under section 1380 of the Code be issued until the expiration of three years after letters of administration had been issued upon the estate of William H. Taylor is not now urged by the appellant, and I do not understand him now to assail the regularity of the execution and the sale thereunder upon any ground, except that the judgment could not be enforced against the real estate in question until the conveyance from Taylor to his wife had by a valid judgment been decreed to have been fraudulent and set aside ; and that in the absence of such a decree the judgment was not a lien on the land for the reason that the title at the time of its entry was in Mrs. Taylor.

This argument has no support in the authorities in this

state. A judgment creditor cannot be deprived of his legal right to enforce collection of his judgment against the lands of his debtor by a fraudulent conveyance thereof prior to the entry of the judgment, nor can he by such a conveyance be forced to pursue an equitable remedy for the collection of his debt, instead of a legal one, and the whole current of authority in this state is to the effect that notwithstanding the fraudulent conveyance the judgment creditor may sell the land under execution upon his judgment, and the purchaser may impeach the conveyance of the land in a suit at law to recover possession, or if he can gain possession defend the title thus acquired against the fraudulent grantee or those claiming under him. (*Chautauqua County Bank* v. *Risley*, 19 N. Y. 369; *Bergen* v. *Carman*, 79 id. 153.)

Of course it can be said that the conveyance of the debtor is not absolutely void but only voidable. That it is good *interpartes*, and the fraudulent grantee may convey a good title to a *bona fide* purchaser, and such a conveyance would destroy the lien of the judgment.

But while the title remains in the fraudulent grantee the lien of the judgment exists and may be enforced against the land with the same effect as if the conveyance had not been made. As against the creditor the conveyance while the fraudulent grantee holds the title is a nullity.

In this case the defendant does not occupy the position of a *bona fide* purchaser for the reason that at the time of the sale by the receiver of Mrs. Lowitz the plaintiff was in possession of the land claiming title under the sheriff's deed and such possession was notice to the defendant of his claim thereto.

The plea of the Statute of Limitations is not available to the defendant.

The action is not to recover possession of the land, that being already in the plaintiff, but to compel the removal of an instrument which apparently impairs and injuriously affects the plaintiff's title. An owner has a right to invoke the aid of a Court of Equity at any time while he is the

owner to have an apparent though in fact not a real incumbrance discharged from the record and this right is never barred by the Statute of Limitations. It is a continuing right which exists as long as the occasion for its exercise. (*Miner* v. *Beekman*, 50 N. Y. 337–343; *Schoener* v. *Lissauer*, 107 id. 111.)

The right to this remedy is, however, denied if the invalidity of the defendant's deed or incumbrance appears upon its face and a resort to extrinsic evidence to show such invalidity is unnecessary, and hence the final inquiry on this appeal is whether the plaintiff's case is within the rule upon which the courts interfere in this class of actions. We think that it is.

The defendant does present an apparent title through the deeds from Taylor to his wife, the death of Mrs. Taylor and the devise to her children and the receiver's deed to himself. In thus presenting the claim of title from Taylor to himself he would not necessarily disclose the defect arising from the fraudulent intent existing in the conveyance by Taylor to his wife. He would disclose it is true the fact that these deeds expressed nominal consideration only, but that fact under the statute which I have quoted would not indicate their fraudulent character. That would only appear upon evidence of Taylor's indebtedness at the time of the conveyance. But while that evidence would exist upon the record in the form of judgment, it would not be any part of the record of the title to the land, but would be extrinsic thereto.

And in ejectment against the plaintiff the appellant could make out a *prima facie* case without developing the defects in his title.

From these facts, all the elements exist to make this a proper case to invoke the aid of a Court of Equity to remove a cloud.

We are of the opinion, therefore, that the plaintiff was entitled to the relief sought, and the order of the General Term should be affirmed and judgment absolute rendered against the appellant with costs in all courts.

PARKER, J. (dissenting). I am unable to agree with the result reached by the majority of the court.

The trial court refused to find as a fact that the deeds made by Taylor and wife to Felt, and Felt to Mrs. Taylor, "were without consideration and were fraudulently made, executed and delivered with intent to hinder, delay and defraud the said Nassau Bank of the City of New York, and were void as against the bank," and rendered judgment in favor of the defendant.

The General Term, however, reversed the judgment on both the facts and the law, and we must now inquire whether the evidence required the finding of fact which the trial court refused to make.

It is apparent from the record before us that the plaintiff, to establish his cause of action, relied wholly on a judgment declaring the deeds to be void on the ground that they had been executed with intent to defraud the creditors of William H. Taylor, in an action originally commenced against Taylor, his wife, and Chauncey Felt.

Were it a valid judgment, the plaintiff's reliance would have been well founded.

But we are agreed, for reasons stated in the prevailing opinion, that the court did not in that action acquire jurisdiction over the infant defendants, and that as to them, the judgment was void.

If the decision of the General Term be upheld, therefore, it can only be done on the ground that there is other evidence requiring a finding that the deeds from Taylor and wife to Felt, and Felt to Mrs. Taylor, were fraudulently made with intent to hinder, delay and defraud creditors.

It will be well to bear in mind, as we consider the evidence, that the deeds alleged to be fraudulent, and which apparently vested the legal title in Caroline Taylor, were executed and delivered November 20, 1874, and duly recorded the day following. That Caroline Taylor died August 5, 1877, leaving a last will and testament, by which she devised such real estate to her three children, one of whom, Caroline, subsequently

conveyed her undivided interest to a receiver appointed in proceedings supplemental to execution. Subsequently, the receiver, pursuant to an order of the court, sold such interest at public auction to this defendant, and a deed therefor was delivered to him, bearing date October 4, 1889, nearly fifteen years after the execution of the deeds, alleged to be fraudulent.

The evidence, which it is insisted required the trial court to find as a fact, that the deeds of November 20, 1874, were fraudulent consists:

1. Of the recital in the deeds of a nominal consideration of one dollar.

2. That at the date of their execution, Taylor was indebted to the Nassau Bank of New York city, and the Germania Bank.

3. That some months later, the banks obtained judgment therefor, and issued executions thereon which were returned unsatisfied June fifteenth, or about seven months after the execution of the deeds.

Undoubtedly, the recital of a nominal consideration would have been *prima facie* evidence, that the conveyance was without consideration as against the Taylors, because regarded as the declaration of each. But they were not parties to the action; indeed, both have long been dead. And as against this defendant, who obtained his deed nearly fifteen years later, such recitals standing alone, should not be regarded as sufficient evidence to set aside the deeds, which were the source of his title.

If such recitals, entirely unsupported, could in any case be held sufficient evidence of the absence of a valuable consideration as against a person not a party to the conveyances, the court should certainly hesitate to so hold on review, where, as in this case, it is apparent that the action was tried by the plaintiff on the theory that the judgment in the other suit was to control the disposition of this one.

Assuming, but not admitting, that the recitals furnish sufficient evidence as against this defendant of the absence of a valuable consideration, and that an appellate court could prop-

erly hold that, under the circumstances already referred to, the trial court erred in refusing to find that the deeds were not founded on a valuable consideration, still, such a finding is not sufficient to condemn the conveyances as a fraud upon creditors.

The statute provides, "nor shall any conveyance or charge be adjudged fraudulent as against creditors or purchasers solely on the ground that it was not founded on a valuable consideration."

It is not true that a voluntary conveyance by one indebted at the time is presumptively fraudulent. Before the presumption can arise, it must appear that the debtor did not have other property at the time sufficient to pay his debts. As was said by this court in *Kain* v. *Larkin* (131 N. Y. 300–307): "When a judgment creditor assails a conveyance made by the judgment debtor, he cannot cast upon the grantee the onus of showing good faith and of establishing that the grantor was solvent after the conveyance by simply showing that the deed was not founded upon a valuable consideration. But the person assailing the deed assumes the burden of showing that it was executed in bad faith, and that it left the grantor insolvent and without ample property to pay his existing debts and liabilities."

The plaintiff did not meet the burden which the decision quoted declares rested upon him. He did not attempt to show that on November 20, 1874, Taylor did not have abundant property, aside from that conveyed, out of which to satisfy the claims of the Nassau and Germania Banks, the only creditors disclosed by the record. The evidence does not demonstrate that the act complained of made him insolvent. The only evidence on the subject is that about seven months later the sheriff returned two executions unsatisfied. The return of the sheriff is evidence that at that time he did not have property within the county where the executions were issued, out of which they could be made, but it was not evidence that he did not have property in the adjoining county, nor that he had not had during some portion of the seven

months prior thereto abundance of property in the same county to have satisfied the claims of the banks.

In *Sherman* v. *Hogland* (54 Ind. 579) the court had under consideration the sufficiency of the complaint. It said: " We do not think it sufficient to charge that some months or years after the conveyance was executed no other property could be found on which to levy an execution, or that at some subsequent time it was ascertained that the debtor had become wholly insolvent."

*Whitesel* v. *Hinery* (62 Ind. 168) was an appeal from a judgment overruling a demurrer to a complaint in a suit like the one under consideration.

The complaint which was filed fifteen months after the alleged fraudulent conveyance averred the grantor's insolvency, and that he was without property subject to execution. It was held insufficient, the court quoting with approval from a prior decision the following : " It is necessary to charge in the complaint and prove on the trial that, at the time the conveyance complained of was made, the debtor did not have left enough of other property subject to execution to pay all his debts."

In *McCole* v. *Loehr* (79 Ind. 430) the courts say : " The allegation that the grantor died hopelessly insolvent does not make the complaint sufficient. The character of a transaction is to be determined by the circumstances surrounding the parties at the time it took place. The validity of a conveyance does not depend upon subsequent events. The question in such cases is the financial condition of the grantor at the time, for if then solvent his subsequent insolvency will not invalidate the conveyance."

The cases thus referred to were cited with approval by this court in *Kain* v. *Larkin* (*supra*), and seem to be decisive of the question under consideration.

It is difficult to discover any principle on which to base a distinction between *Kain's* case and this. Indeed *Kain's* case seems to command the judgment which the trial court rendered. What were the important facts ? Two days after

Kain commenced his action against Larkin, which resulted in a judgment which was the foundation of the action to set aside the deed, Larkin gave his brother a mortgage for $3,000 on his house and lot, that being the full value of the property, and drew out of the savings bank $1,400 which he had on deposit, and immediately re-deposited $1,200 in the name of his wife. Subsequently he conveyed the house and lot to his minor daughter, the deed declaring the consideration to be "natural love and affection and one dollar." Then Larkin's brother satisfied the mortgage which had been given him. The plaintiff also proved that about one year and seven months after the conveyance the sheriff returned unsatisfied an execution issued against the property and effects of Larkin, and that subsequently, and before the commencement of the action, Larkin was examined in proceedings supplemental to execution. The learned trial court thought the plaintiff had established the fraudulent character of the deed, and so found. But this court reversed the judgment on the ground that the plaintiff did not show the defendant's financial condition at the precise time of the making of the conveyance. It said : "It is quite probable that Patrick Larkin did divest himself of all his property by the disposition made of his deposit in the savings bank and the conveyance of his real estate. But that should not be left to mere inference. If true, it is capable of proof, and the plaintiff who comes into court alleging fraud and assailing the deed therefor should furnish the proof."

I advise a reversal of the order of the General Term.

All concur with BROWN, J., except FOLLETT, Ch. J., and PARKER, J., dissenting.

Order affirmed and judgment absolute for defendant.