(7 Misc. Rep. 596.)

HAM v. GILMORE et al.

(Supreme Court, Special Term, Onondaga County. March 30, 1894.)

1. FRAUDULENT CONVEYANCES—EVIDENCE.
   A conveyance may be shown by circumstances to be fraudulent as against a denial of a fraudulent intent by all the witnesses interested in supporting the conveyance.

2. EVIDENCE—FAILURE OF PARTY TO TESTIFY—PRESUMPTION.
   Failure of a party to testify as to facts within his knowledge raises a presumption that his testimony, if given, would be unfavorable to him.

Action by Martha G. Ham against William W. Gilmore, impleaded with others, to foreclose a mortgage.

Baldwin & Ide, for plaintiff.
Fuller & Glen, for defendant.

WRIGHT, J. The mortgage in question is dated February 24, 1885, and purports to secure $1,800 and interest, and was executed by the defendant Edward E. Ham to his attorney, Joshua B. Randall, who, on the same day, assigned the same to Sarah E. Ham, the wife of the mortgagor, and she, on the 14th day of January, 1892, assigned the same to the plaintiff, who is the daughter of said Edward E. and Sarah E. Ham, with whom she then resided. No consideration passed from the mortgagee, Randall, to the mortgagor, and none on said assignments at the times of these transactions. The plaintiff claims that the mortgage was given, in pursuance of a prior arrangement with his wife, as security for an indebtedness then owing by him to her, the title passing through Randall as a matter of accommodation. The defendant Gilmore claims that the mortgage was given without consideration from any one, and for the fraudulent purpose, to the knowledge of all parties, of preventing the collection of certain claims upon which the mortgagor was liable to him, one of which, on the 2d day of January, 1891, ripened into a judgment in favor of said Gilmore against said mortgagor for $1,069.47.

To determine these questions of fraud and of lack of consideration it is necessary to go considerably into the business history of the mortgagor and his wife and her sister, Helen Gilmore, and

also into the business history of the mortgagor and the defendant Gilmore. First, as to the consideration: Mr. Ham claims that his indebtedness to his wife arose from loans of money. Her only source of income, to any important extent, was her father's estate, and the last date of her receiving any sum therefrom was April 2, 1864, and it amounted to $4,484.75; interest to January 1, 1880, at 7 per cent., $4,944.44; interest to February 24, 1885, at 6 per cent., $1,385.03; promissory notes, for which Losey mortgage was given, $1,778,—total at date of mortgage, $12,592.22. This is all that Mr. Ham can be charged with, including the $300 paid by Mrs. Ham into the Shuler trade, hereafter mentioned. He paid his wife as follows: May 25, 1871, equity in the Shuler place, $5,500; interest to January 1, 1880, at 7 per cent., $3,311; interest from January 1, 1880, to February 24, 1885, at 6 per cent., $1,699.50; May 14, 1880, money obtained from Eliza Weaver, $3,000; interest to February 24, 1885, $860; May 25, 1882, No. 21 Adams street property, $2,500; interest to February 25, 1885, $412,—total paid up to date of mortgage, $17,282. Therefore, instead of Ham being indebted to his wife when he gave her this mortgage, she was indebted to him in the sum of $4,689.78. The proposition that the mortgage was given without consideration must therefore be decided in the affirmative. Second. Was it given fraudulently as to Gilmore's claim on which his judgment is founded? On December 19, 1866, the defendants Edward E. Ham and William W. Gilmore, who were in partnership as merchants, borrowed from the defendant Sarah E. Ham $675, and gave their firm note therefor. Gilmore left the state in 1869. On February 24, 1885, the date of the mortgage, this note was still held by Mrs. Ham, and though, as to Mr. Ham personally, it was subject to the defense of the statute of limitations, yet, because of Gilmore's absence from the state, the partnership and Gilmore personally remained liable thereon; and, in case Gilmore should be compelled to pay it, Ham would be liable to pay Gilmore his one-half thereof. That was the contingent liability of Ham to Gilmore on this note matter at the date of the mortgage. Afterwards Gilmore was sued by the defendant herein (Sarah E. Ham) on said note, and was compelled to pay the same, and Gilmore thereafter brought suit against Edward E. Ham for his proportionate share thereof, and on January 20, 1891, recovered thereon the judgment set up in the answer for $1,069.47. The mortgage covers all the property which the mortgagor owns, and which is of little, if any, value in excess of the face amount of the mortgage, with the interest thereon. Other transactions tend to illuminate this matter.

Gilmore, in the year 1869, suddenly left the state, and remained away for many years. He left the entire partnership property in the hands of his partner, Edward E. Ham. The value of that property is placed by Mr. Ham at about $1,000 or $1,200, but Gilmore testifies that a short time prior to his leaving they took an inventory thereof, and that at the time he left the state it was worth the inventoried value, viz. $7,000. He also testified that Mr. Ham himself, also, on a former trial testified that it was worth at that

time the sum of $7,000, and Mr. Ham on this trial expressly declined to make a positive denial that he did so testify. They were the only witnesses on the question of value. Also, considering the intelligence of these parties, it is hardly probable that Ham and Gilmore would undertake to support their families in their apparently good social standing by a mercantile business on a capital stock of only $1,000 or $1,200 in value. It must therefore be fixed at $7,000. The firm indebtedness was about $800. What became of this property? Ham, after Gilmore left, took sole possession of it, and kept the business along until May 25, 1871, when he sold the same to one Shuler, who in consideration thereof, and of the $300 above mentioned, furnished by Mrs. Ham, conveyed to her real estate of the value of $5,500. The partnership matters were in that unsettled condition, and Mr. Ham was liable to be called to an accounting by Gilmore for his interest therein, at the time when this mortgage was given unless he could shield himself behind the statute of limitations. Again, it appears that, before this mortgage was made, Mr. Ham had been engaged in fraudulently covering property of his wife's sister, Helen Gilmore, to enable her to escape liability on her debt which Gilmore held against her. An action had been brought against her in the United States district court, and pending that action, and fraudulently to avoid liability thereon, she, on March 6, 1880, transferred all her property, real and personal, to her said brother-in-law, Edward E. Ham, without consideration, and he, on May 14, 1880, sold part of it for $3,000, and gave the money to his wife. Thereafter judgment passed against Helen Gilmore. The defendant Gilmore purchased that judgment, and brought an action thereon in the supreme court of this state to make the judgment of the United States district court a judgment of this court, and on February 20, 1888, he obtained a judgment thereon against said Helen Gilmore for $2,276.10. This occurred four days before the mortgage was made in this action. Ham and his wife knew that they were liable to be called to an accounting by Gilmore in a creditor's action on this judgment (which was afterwards successfully brought) for the property of their sister, Helen Gilmore, which they were endeavoring to cover and secrete.

At the time of giving this mortgage by Ham to his wife (through his attorney), we find, therefore, this condition of things existing: Mr. Ham liable contingently to Gilmore on the note matter for about $1,000; liable to an accounting to Gilmore for his share of the partnership assets, worth $7,000, less his share of the indebtedness paid by Ham, and interest; liable jointly with his wife to an accounting to Gilmore for the value of the property of their sister, which they were fraudulently covering, in the sum of $2,276.10; and Mr. Ham insolvent. A voluntary conveyance by an insolvent to a member of his family is presumptively fraudulent. Smith v. Reid, 134 N. Y. 568, 31 N. E. 1082. Mr. and Mrs. Ham testify that fraud was not intended by them, but fraud may be established by circumstances as against the denial of such intent by all the witnesses interested in supporting the validity of the transaction. Parker v. Conner, 93 N. Y. 118; Van Mater v. Burns (Sup.) 27 N. Y. Supp. 624.

The plaintiff, though it does not appear that she was under any disability, did not testify, and this circumstance may also be considered in determining the question of fraud in relation to the act in which she was a participant. Bleecker v. Johnston, 69 N. Y. 309; Whitney v. Town of Ticonderoga, 127 N. Y. 46, 27 N. E. 403. Reason cannot infer from this array of suspicious looking facts, and all the testimony, any other conclusion than that the mortgage was given by the mortgagor, and was accepted by his attorney and by his wife and daughter under their several assignments, for the purpose of defrauding the defendant Gilmore out of the claim on which his judgment was obtained, and generally out of all his said claims against the mortgagor. This conclusion is sustained by Coleman v. Burr, 93 N. Y. 17; Parker v. Conner, Id. 118; Smith v. Reid, 134 N. Y. 568, 31 N. E. 1082. The mortgage must be adjudged null and void as against Gilmore, and his judgment to be a lien prior thereto on the premises described therein. 2 Rev. St. (Birdseye's Ed.) p. 1236, § 19.