BUTCHER v. CANTOR et al.

(District Court, E. D. New York. March 9, 1911.)

1. BANKRUPTCY (§ 172*)—FRAUDULENT TRANSFERS — CONVEYANCE FROM HUS-BAND TO WIFE.

Where a bankrupt was not insolvent, or at least did not owe debts which could not apparently be paid from his resources, at the time he conveyed property to his wife in recognition of a trust, pursuant to which he held the property, to secure the wife in part for funds which she contributed to the purchase thereof, the transfers, not made for the purpose of keeping other creditors from reaching the property, were valid.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 172.*]

2. BANKRUPTCY (§ 172*)—CONVEYANCE.

Where, at the time a bankrupt made certain transfers to his wife, he was solvent, and no obligations against him had matured, or were known to him as likely to mature, which were not provided for, he was not required to take into account the possibility that real estate on which he had executed mortgages and given personal bonds would be insufficient to pay the whole of such mortgages and retain in his hands property sufficient for the full amount thereof, in order that such transfers might not be set aside as fraudulent on deficiency judgments being subsequently recovered against him, resulting in his becoming a bankrupt.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 172.*]

In Equity. Suit by Edward Butcher, Jr., against Samuel Cantor and another to set aside certain transfers by the bankrupt to his wife for fraud. Judgment for defendants.

Martin Wechsler, for complainant.

Herman G. Rabinowitz and Simon Sultan, for defendants.

CHATFIELD, District Judge. This action has been brought by the trustee in bankruptcy, who was elected in proceedings instituted by the filing of a voluntary petition and an order of adjudication upon the 23d day of April, 1910. The defendants are the bankrupt and his wife. The action is brought to set aside a transfer from the bankrupt to his wife of a certain mortgage given by one Krimsky to the bankrupt, to secure the sum of $25,000, dated August 1, 1906, and assigned by the bankrupt to his wife for the sum of $1 and other valuable consideration, upon the 21st day of January, 1908. The complainant in the present suit also seeks to set aside the transfer of a house in Brooklyn, in which the bankrupt and his wife, with their children, and also certain children of Mrs. Cantor by a former marriage, were living, and which was conveyed, subject to incumbrances, by the bankrupt to his wife, for $100 and other valuable consideration, in the spring of 1909.

It is sought to set aside these transfers upon the ground of fraud, the complainant charging that, at the time the transfers were made, Dr. Cantor was anticipating deficiency judgments upon real estate mortgage bonds, which had been executed by him in connection with previous purchases of real estate, and as to which, because of the conditions of the real estate market in the years 1908 and 1909, foreclosures were imminent. It is alleged that by these transfers the bank-

rupt intended to put the property out of the reach of those whom he was bound to protect as creditors, and thus the act is said to be brought within the provisions of the bankruptcy statute forbidding a transfer of property, to hinder, delay, or defraud creditors, under which actual insolvency at the moment of transfer is not a necessary condition, if actual fraudulent intent be shown, and if the expected condition of insolvency actually occurs. The complainant also charges that certain representations as to the financial standing of Dr. Cantor were false, and hence that no voluntary trust could be created or recognized, or preferential payments made, if thereby a state of insolvency was caused, and the property put beyond the reach of creditors, in defiance of the laws of the state as they existed at the time.

The complainant has introduced the testimony of the bankrupt and his wife taken before the referee. Both the bankrupt and his wife testified also at the trial, and certain contradictions have been noted, and certain legal conclusions of falsehood and fraud are claimed from the testimony as given. It appears from the testimony that the bankrupt's wife was in business as a midwife and had some considerable revenue, even at a time when her husband was a successful physician. Upon moving to Borough Park, into the house involved in one of the transactions questioned in this action, Mrs. Cantor gave up her business as a midwife, and the bankrupt was unable to keep up (because of ill health and change of location) his medical practice. But at the time of moving to Borough Park Mrs. Cantor was in the possession of considerable personal property, which had been conveyed or transferred to her, because she claimed it as the result of investment of her own money given to Dr. Cantor, with which to conduct various real estate operations in connection with his own credit and his own funds, through the Van Orden Trust Company.

If Dr. Cantor was a successful physician, and carried a bank account in his own name, on the strength of which, with his wife's indorsements, he made loans from time to time with that bank, if he invested the funds procured in that manner, including the surplus from his own bank account, into which the moneys given to him by his wife for investment were deposited, and if he also engaged in the real estate business with one Wolper, as is shown by the testimony, and contributed from the same source moneys for partnership purposes, it is evident that a payment to his wife at any time, under such circumstances that any other creditors would be thereby prevented from obtaining the full amount of their claims, would be a preferential payment on his part. On the other hand, if any transfer of property or payment to Mrs. Cantor was not in payment of the amount which she had advanced, but was a transfer of specific property (exceeding in amount the advances with interest), such a transaction could be capable of but two constructions, if the bankrupt was insolvent at the time of the transfer. Either the bankrupt was intending to make way with his assets, so as to keep them out of the reach of any creditors, or he was recognizing a trust, invalid as against creditors, and was thereby making a fraudulent transfer, which was at the same time preferential, if thereby any debt was paid. But if the bankrupt at that time was not insolvent, or did not owe debts which could not apparently be paid,

from his resources, he could recognize such a trust, give away his property, repay his wife, or do as he pleased. And the real question in the case seems to be whether or not, at the time of these transfers, Dr. Cantor was in a position to make them, and whether he did intend to keep other creditors from reaching this property or not.

It appears that two or three judgment creditors have proven their claims in the bankruptcy proceedings, each of these being holders of deficiency judgments upon foreclosure, upon property previously conveyed by the bankrupt, in which the earliest sale was had and the judgment for deficiency created, in January, 1910. The petition in bankruptcy was filed April 23, 1910, and the transaction with reference to the Borough Park house occurred in the month of May, 1909. It would appear from the testimony that there was a first and second mortgage upon this Borough Park house, together with unpaid installments, taxes, etc. The value of the property would not seem to be such that it would be likely to produce an equity upon a forced sale, and the testimony shows that the deed was given for a consideration of $100 to the bankrupt's wife, who undertook to carry the property, and live in it with her own family and that of the bankrupt, as has been before set forth. While the motive for this transaction on the part of the bankrupt's wife may have been to preserve her home, inasmuch as she was in a position to carry the expenses of that home, and although the bankrupt may have realized, at the time of the transfer, that any creditors could look with suspicion upon a transfer to his wife under those circumstances, when he had already divested himself of his other property (except some $500 in cash), nevertheless the testimony does not satisfy the court that such a transfer would be fraudulent, nor that the consideration was so grossly inadequate that fraud must be imputed therefrom.

The other transaction which is attacked is the transfer of a third mortgage upon property near the corner of Goerck and Rivington streets, in the borough of Manhattan, which was sold to the bankrupt, in or before March, 1906, and which was afterward transferred, on August 1, 1906, to one Krimsky. who gave back a mortgage for $25,-000, on which $23,000 is still due, and which mortgage was assigned by the bankrupt to his wife. on January 21, 1908, in recognition of her claim that the property had been purchased with her own funds, and that the mortgage in equity belonged to her. At the time of this assignment no question had been raised as to any liability upon the bonds of mortgages previously executed, upon property which had in the meantime been sold subject to those mortgages, and the first foreclosure was not begun until a year and a half later.

The judgment held by the judgment creditor Palmieri arose out of a transaction with relation to property on Thompson street, on the other side of New York from the Rivington street corner. In the year 1906, Dr. Cantor, the bankrupt, and one Wolper were in partnership and conducting real estate transactions, in the course of which they purchased from Palmieri the property Nos. 40 and 42 Thompson street, subject to first and second mortgages aggregating $60,000, and as part payment for the equity in which they gave a third mortgage of

$4,000 and $10,000 in cash. This property was transferred by them in the year 1906, to one Isaacs (for $10,000 cash, and a fourth mortgage of $4,000, which was paid by October 1, 1907), and was sold under the third mortgage in January, 1910 (in a suit started July 28, 1909), being bid in by the mortgagee for the sum of $250 over and above the first and second mortgages, thus creating a deficiency for substantially the whole of the third mortgage, and this deficiency judgment is the claim subsequently proven in bankruptcy. Isaacs had surrendered the property to a grantee named by Palmieri in the fall of 1907, and by this means 'a merger with the Palmieri mortgage was avoided; but the testimony does not show that the defendants knew of this surrender.

The complainant seeks to show that, because of the panic in the money market in the fall of 1907 and the beginning of the year 1908, values in real estate had dropped, and real estate transactions had fallen off to such an extent that the bankrupt anticipated being called upon to pay deficiency judgments upon mortgages, as to which he had executed the bonds and then sold the property, and which he knew would have to be foreclosed. This would apply more especially to the transfer of the Borough Park property, which did not occur until the following spring, when real estate values had been more seriously affected. It is more difficult to determine whether or not fraud existed in the transaction in 1908, and especially since that fraud is with relation to property claimed to be held in trust and not alleged to have constituted a preferential payment. If a man be paying his debts and securing one creditor without securing others, who are holders of obligations not yet matured, but evidently to be reckoned with, and is considering his ability to meet obligations, then the possibility of being called upon to pay deficiency judgments upon mortgage bonds should be held in mind. But if a man, affected by ill health and trouble not purely arising from lack of money upon which to live, closes out his business and disposes of his property to those who may be equitably entitled or whom he wishes to secure for the future, then it should not be held fraudulent if he did not provide security against the full amount of claims, which there is no reason to suppose will ever become due or be obtained as a result of litigation, and as to which security exists which presumptively exceeds the amount of the debt.

In the present instance, if Dr. Cantor were compelled to take into account the possibility that the real estate upon which he had executed mortgages and given his personal bonds would be insufficient to pay any part of those mortgages, and if he were required at all times when disposing of his property to retain security for the full amount of those mortgages, then he would be unable to transfer the real estate which is the first fund from which these mortgages are expected to be paid; and the presumption that the real estate is sufficient to pay the face value of the bond, and that a deficiency judgment will not result unless some additional security is needed over the value of the real estate, would be of no effect whatever. Even assuming that, in anticipation of hard times, Dr. Cantor thought best to transfer property in which his wife's money had been invested, and which he was bound (so long as the creditors were not wronged thereby) to hold for her benefit, or to

transfer to her, to the extent at least that she was interested therein, and even if he anticipated that at some future time conditions might be such that he then would be called upon to make good whatever might be the amount for which he was liable, nevertheless it does not seem that it would be fraudulent, if he were solvent at the time of the transfer. If no obligation had then matured, or were known to him as likely to mature, he could still deed his property to his wife, either as a gift or on account for funds which he had invested for her.

If we look at the transaction from the standpoint of a preferential payment, the same situation would develop as to the likelihood of being called upon in the future to pay these claims and as to the present solvency of the person making the payment. But the complainant has sued here, not to set aside a preference (as more than four months elapsed before bankruptcy), but to have the entire transaction held as void because of fraud. The defendants have insisted and testified that the claim of Mrs. Cantor arose, not from a trust or lien, but from the actual bailment or transfer of funds with which Dr. Cantor was to purchase property as agent. In some instances it would seem that his own funds were also used, and that he and his wife were rather part-ners than debtor and creditor; but from the standpoint of fraud there would seem to be no reason to set aside the transfers.

The testimony of the defendants was offered in evidence by the com-plainant, not specifically in contradiction of testimony given by the de-fendants upon the trial, but generally, as a part of the complainant's case, although certain portions were called to the defendants' attention and were seemingly intended for use as cross-examination. It is dif-ficult, therefore, to separate the parts of this testimony with which the complainant has the right to attempt impeachment of the defendants' testimony on the trial from the balance of the testimony which, if not contradictory, must be taken at its face value, and the claims of Dr. and Mrs. Cantor as to investment of her funds, as to the reasons for the transfers, as to the good faith of both parties, and as to Dr. Can-tor's solvency, without knowledge or reason to suppose that a liabili-ty would arise from his secured debts, are affirmatively established.

The deficiency judgment obtained by the creditor Palmieri was en-tered also against Wolper, Dr. Cantor's former partner, and the record shows that Wolper has been sued, with other parties, to set aside transfers of certain property, which it is claimed he endeavored to dis-pose of, so as to avoid paying these deficiency judgments. If the judg-ment can be collected from Wolper, it would have no bearing upon the issues in this case, but would necessitate the withdrawal of the claim in bankruptcy by Palmieri, unless some right of subrogation or contri-bution should be acquired by other parties.

The attention of the court has been called to a memorandum deci-sion in the case against Wolper, in which the transfer of property has been held to be presumptively fraudulent, under the authority of Smith v. Reid, 134 N. Y. 568, 31 N. E. 1082; this memorandum stating that a voluntary transfer by an insolvent of all his property is presumptively fraudulent. The case of Smith v. Reid, while stating this doctrine as a premise, makes the question of fraudulent intent one of fact, under

the Laws of 1909, being chapter 50, § 265, of the Consolidated Laws of New York, which provides that no conveyance shall be adjudged fraudulent as against creditors solely upon the ground that it is not founded upon a valuable consideration. And as was held in the case of Kain v. Larkin, 131 N. Y. 300, 30 N. E. 105, proof may show that a conveyance under such circumstances was without fraudulent intent.

The case at bar presents exactly the situation covered by the decision of Kain v. Larkin, supra, and brings it also within the sentence in the opinion in the case of Smith v. Reid, supra, 134 N. Y. at page 576, 31 N. E. 1082, that in the absence of explanation the presumption of fraud would control. The defendants seem to have explained the transactions in such a way that they have met the issue of fact, and shown that at the time of the transfers no intent to defraud creditors existed, and that they were not bound to bid in the property at the sales under foreclosure, nor to protect the prior mortgages, solely because at some prior time, or at the time when the bond for which the mortgage under foreclosure had been given was executed, they had been in the possession of property which would have been available to pay the judgment lien, if it had accrued at that moment.

The defendants may have judgment.