## CASTELLANO v. OSBORNE et al.

(Circuit Court of Appeals, Second Circuit. December 6, 1926.)

No. 108.

1. **Fraudulent conveyances** ⬅➡74(3)—**Insolvent's voluntary conveyance is presumptively fraudulent (Real Property Law N. Y. § 262).**

Voluntary conveyance by insolvent person is presumptively fraudulent, within Real Property Law N. Y. (Consol. Laws, c. 50) § 262, superseded by Debtor and Creditor Law N. Y. (Consol. Laws, c. 12), §§ 270–281 (as added by Laws 1925, c. 254).

2. **Fraudulent conveyances** ⬅➡1½—**Validity of conveyance of realty depends on law of state in which it lies.**

Validity of conveyance of realty must be tested by applicable laws of state in which property lies.

3. **Fraudulent conveyances** ⬅➡74(3)—**In New York, debtor's voluntary transfer of property is presumptively fraudulent.**

In New York, debtor's transfer of property without consideration is presumptively fraudulent as against creditors, and burden is not on creditor to show that other property was retained.

4. **Fraudulent conveyances** ⬅➡92—**Insolvent's voluntary conveyance of realty received under will to his wife and daughter under claim of carrying out oral trust held fraudulent (Personal Property Law N. Y. § 156, subd. 3; Real Property Law N. Y. §§ 242, 262).**

Under Personal Property Law N. Y. (Consol. Laws, c. 41) § 156, subd. 3 and Real Property Law N. Y. (Consol. Laws, c. 50), §§ 242, 262, insolvent debtor's conveyance of realty received under his mother's will to his wife and daughter without consideration, under claim that he was carrying out trust wished by his mother, held fraudulent and void.

5. **Fraudulent conveyances** ⬅➡272—**Burden held on bankrupt to show that value of his property at time of voluntary conveyance was sufficient to pay his debts.**

In action to set aside bankrupt's conveyance of realty as fraud on creditors, burden is on bankrupt to show that value of his property at time of conveyance was sufficient to pay his debts.

6. **Fraudulent conveyances** ⬅➡57(1)—**Market value of bankrupt's property at time of alleged fraudulent conveyance held proper basis for determining value thereof on issue of insolvency.**

On issue of debtor's insolvency at time of alleged fraudulent conveyance, market value of his property, consisting largely of unlisted securities, was primary basis for determining value thereof; that there was no ready market for securities, their book value, and earnings have direct bearing on value.

7. **Fraudulent conveyances** ⬅➡297—**Finding that bankrupt was insolvent when he voluntarily conveyed realty to his wife and daughter held warranted.**

Evidence held to warrant finding that bankrupt was insolvent at time of conveyance of realty to his wife and daughter without consideration.

Appeal from the District Court of the United States for the Eastern District of New York.

Suit by Louis J. Castellano, as trustee in bankruptcy of Lawrence W. Osborne, bankrupt, against Louise Nicoll Osborne and another, to set aside deed transferring real property. Decree for plaintiff, and defendants appeal. Affirmed.

Parmly, Stetson & Woodward, of New York City (Wm. L. Woodward, of New York City, of counsel), for appellants.

White & Case, of New York City (James Adam Murphy, of New York City, of counsel), for respondent.

Before MANTON and MACK, Circuit Judges, and AUGUSTUS N. HAND, District Judge.

MANTON, Circuit Judge. On June 22, 1920, Lawrence W. Osborne held title by deed of conveyance, duly recorded, to property valued at $25,000, situate at Garden City, Nassau County, N. Y. On that day he transferred by deed the fee to such property to his wife and daughter, which deed was recorded June 26, 1920. In July, 1924, he was adjudicated a bankrupt. His trustee in bankruptcy sues to set aside the conveyance referred to, insisting that at the time of the conveyance the bankrupt was insolvent and that such transfer was fraudulent as to his creditors.

As far back as 1914, Osborne opened a trading account with a stock brokerage firm of Curtis & Sanger, and from that time until January, 1921, he traded in bonds and securities. At the time of the transfer of the property, his account with the brokerage firm showed a debit of $68,831.45, and he was short 20 shares of Sinclair Oil, 100 New Jersey Zinc rights, 100 shares Texas Coal, and 150 shares Transcontinental Oil. These securities, if purchased by the brokers at this date, would have cost $9,255, and therefore his total indebtedness amounted to $78,086.45. On that day he had pledged, as collateral, with the brokers, various securities of listed and unlisted description. The court below found that the bankrupt's liabilities exceeded his assets by $12,525.70 on the date of the transfer. Some of the securities pledged with the brokers, in an amount of $3,949.37, belonged to his mother-in-law, wife, and children.

The deed of transfer recited that the property had been deeded to the bankrupt by a deed dated January 20, 1914, recorded January 27, 1914, in the office of the clerk of the county of Nassau, and that it was the wish of his mother, from whom he obtained the property by her last will and testament, that it should pass to his wife and daughter. [1] By section 262 of the real Property Law of the state of New York (Consol. Laws, c. 50), effective at the date of this conveyance, a conveyance with intent to defraud creditors is void. By its terms a conveyance or assignment in writing or otherwise of an estate, interest, or existing trust in real property, or rents or profits issuing therefrom, made with the intent to hinder, delay, or defraud creditors with like intent, is void as against every person so hindered, delayed, or defrauded. This section is now superseded by sections 270–281 of the Debtor and Creditor Law (Consol. Laws, c. 12, added by Laws 1925, c. 254). It is the law, as established by the decisions of the highest court in the state, that a voluntary conveyance made by a person insolvent at the time of the conveyance is presumptively fraudulent. Kerker v. Levy, 206 N. Y. 109, 99 N. E. 181; Smith v. Reid, 134 N. Y. 568, 31 N. E. 1082. [2, 3] The property being situated in the state of New York, the validity of this conveyance must be tested by the rule of law applicable thereto as established in the state of New York. Klinger v. Hyman, 223 F. 257, 138 C. C. A. 499. By section 156, subd. 3, of the Personal Property Law (Consol. Laws N. Y. c. 41), it is provided that a person is insolvent, within the meaning of the statute, who either has ceased to pay his debts in the ordinary course of business, or cannot pay his debts as they become due, whether he has committed an act of bankruptcy or not, and whether or not he is insolvent within the meaning of the federal Bankruptcy Law (Comp. St. §§ 9585–9656). Denike v. N. Y. & R. Lime Co., 80 N. Y. 599; Abrams v. Manhattan Consumers' Brewing Co., 142 App. Div. 393, 396, 126 N. Y. S. 844. It is also the law of New York that a transfer without consideration by one who is then a debtor raises the presumption of fraud, and the creditor may stand upon that presumption until it is repelled, and the burden is not upon him to show that other property was retained. Ga Nun v. Palmer, 216 N. Y. 603, 111 N. E. 223.

[4] In the appellants' pleading, it is admitted that he held absolute fee by record title from his mother in January, 1914. There is no deed of trust recorded or even suggested, and the attempt to establish a trust is merely an allegation of his mother's wish in that respect. But, under section 242 of the Real Property Law (Consol. Laws, c. 50) of the state of New York, a trust of real estate cannot be created, except by a deed or conveyance in writing subscribed by the person creating it, unless by act or operation of law. Woolley v. Stewart, 222 N. Y. 347, 118 N. E. 847. It is not asserted or claimed by the appellants that the property was voluntarily transferred by the bankrupt to his wife and daughter as a gift, or in consideration of the relationship. On the other hand, it is endeavored to support the conveyance on the theory of carrying out the trust wished by his mother.

We think it clear that the transfer is fraudulent in law. In June, 1920, his daughter was an infant. He was heavily in debt. His brokers were constantly demanding more collateral for the indebtedness to them, and he had stripped himself and his family of all other property which they had

and transferred it to them. With their possession of it, even then, they were not protected against his large indebtedness of $78,-086.45. His last deposit of collateral was in June, 1919.

[5] It is argued that the unlisted securities consisting of stock of the Wyoming Hotel Company and series A and B bonds of the Hempstead Plains Company were valued too low by the court below, and that, if their book value had been properly appraised, it would have established the fact that the bankrupt was solvent at the time of the transfer of his real property. The burden rested upon the bankrupt to show that he was paying his debts as they matured in the ordinary course of business, or that he could pay his debts as they became due. If the property could not be sold for the amount of his debts, he could not pay them, and therefore he was insolvent.

[6] In expectation of success on this appeal, it is incumbent upon him to establish that the property could be sold for an amount sufficient to pay his debts. In the appraisal of property of this kind, it is necessary to establish its actual market value. The fact that there was not a ready market for the bonds, its book value, and its earnings have a direct bearing, but in the last analysis the test is what is its market value at the time of the transfer.

[7] The Wyoming Hotel Company stock was valued in the petition of the bankrupt as worth $7,500, or $375 a share. In April, 1926, this stock brought $301 a share at auction sale. It appears that this stock did not pay dividends in 1922 and 1923; also that it would not be accepted as collateral by the banks in Chicago, where the property owned by the Wyoming Hotel Company was located. Below the stock was valued at $600 per share. Its assets consisted of leaseholds. The corporation was capitalized for $20,000, at $100 a share. This value was arrived at by taking into consideration the value of its assets and the earning of the stock, as shown by the accountant's reports. The value fixed by the court below was liberal, and the appellants have no just complaint.

The bonds, series A, of the Hempstead Plains Company, bore interest at the rate of 8 per cent., but there was no obligation to pay interest until maturity in 1960. Series B bore interest at 2 per cent. per annum, beginning July, 1920, and annually thereafter, but there was no obligation to pay interest until maturity in 1960. Holders of the outstanding series B certificates were privileged to exchange their bonds for stock, provided the par value of the stock so issued did not exceed the surplus of the company over and above all its outstanding obligations.

The court below held that the book value of the company's assets on the date of the transfer of the real property was not the market value of the series A and B debentures on that date, because neither could be cashed on that day. Payment of interest or principal could not be demanded until 1960, and interest had not been paid on either. The court below stated that, if the principal and interest at 6 per cent. per annum on the series A debentures were paid in full in 1960, each dollar of the face value of the bond would be $3.40, and that the way to arrive at the fair value of these debentures at the time of the transfer was to discount $3.40, so as to find what sum, together with interest thereon at 5 per cent., compounded annually, would, at the time of the transfer, have been sufficient to produce $3.40 in 1960, 40 years after the transfer, and this was calculated to be .4891.

On this basis would be found what the fair market value of each dollar of the face value of the series A debentures would be, if the book value of the corporation had been 100 per cent. But it was said that, inasmuch as the book value was only $71\frac{1}{2}$ per cent., the face value of such series A debenture was but .349707, or, for $4,650 face value, $1,626.14, and this was found to be the fair value at the time of transfer. In arriving at the fair market value of the series B debentures it must be noted that they were less attractive as an investment on the date of transfer, as the interest was not payable until 40 years later, and then at the rate of 2 per cent.

The real estate owned by the company was not yielding income: There were some mortgages and Liberty bonds which were income-producing. Considering the 2 per cent. paid in full 40 years after the transfer, which would make the face value of the debentures worth $1.80, and discounting $1.80, so as to find what sum, together with interest thereon at 5 per cent., payable annually, would, at the time of transfer, have been sufficient to purchase $1.80 40 years later, it was calculated to be .2590. This was held to be a fair value of each $1 of the face value of such debentures at the time of such transfer, if the corporation's capital was 100 per cent. But, holding again that, inasmuch as it was but $71\frac{1}{2}$ per cent., the value of each $1 of the face value of such series B debentures was fixed at .185185, or a total

face value of $8,611.10, which was found to be the fair value at the time of transfer.

Considering these various elements referred to, we think the court below fully and adequately estimated the market value of the securities brought into question in determining whether or not the bankrupt was solvent at the date of transfer of his real property. An examination of the list of securities which were pledged as collateral satisfies us that the court resolved the question of fact properly, when he held that the bankrupt was insolvent at the time of transfer.

Decree affirmed.