(21 App. Div. 460.)

### GUY v. CRAIGHEAD et al.

(Supreme Court, Appellate Division, First Department. October 22, 1897.)

FRAUDULENT CONVEYANCES—INTENT—CONSIDERATION—INSOLVENCY—EVIDENCE.

A debtor conveyed land to his wife in 1892 without consideration. Enforcement of the creditor's claim had been threatened some months before. He had no defense to the claim, but he considered it unjust, and by his efforts a final judgment against him was delayed until 1896. At the time of the conveyance he was solvent, and was worth $60,000, having on hand $35,000 in cash that he had just obtained on a mortgage of the land. Subsequently he became insolvent, accounting for the disappearance of the cash by losses in speculations, which, however, were but vaguely described. The deed to the wife was never recorded, and the debtor continued to manage the property as his own, and disposed of part of it under a power from the wife, receiving the proceeds and giving her a note for them. Between the time of the conveyance and the time of final judgment against him on the claim, he conveyed all his real and personal property to his wife,—part of it in part payment of said note. Otherwise, he testified, the purpose of the conveyances was to make suitable provision for the wife. *Held* to show a fraudulent scheme of the debtor to place his property beyond the creditor's reach, and the initial conveyance was set aside.

Appeal from special term.

Action by Fred E. Guy against Horace Craighead and another. From a judgment dismissing the complaint after a trial on the merits, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and PATTERSON, JJ.

Edward B. Hill, for appellant.

Charles Strauss, for respondents.

PATTERSON, J. This is a creditors' action to set aside, as fraudulent and void, a conveyance made on the 3d day of March, 1893, by the defendant Horace Craighead to his wife, of certain lots of land situate in the city of New York. The court below dismissed the complaint on the merits, and from the judgment entered upon that decision this appeal is taken.

It is a familiar rule that, to authorize the setting aside of a conveyance on the ground of fraud upon creditors, there must have been, not only the conveyance itself, but it must transfer property out of which the creditor could have realized his claim, or some portion of it, and the transfer must have been made with intent to defraud. Hoyt v. Godfrey, 88 N. Y. 669. The conveyance in this case was without consideration, or a voluntary one. That is not enough to authorize a judgment setting it aside. The statute is entirely plain upon that subject. Among the general provisions of the statute of frauds (section 4, p. 137, 2 Rev. St.), it is enacted that:

"The question of fraudulent intent in all cases arising under the provisions of this chapter shall be deemed a question of fact and not of law, nor shall any conveyance or charge be adjudged fraudulent as against creditors or purchasers solely on the ground that it was not founded on a valuable consideration."

This section was passed to incorporate in the statute law the rule of decision as laid down by the court of errors in the leading case of Seward v. Jackson, 8 Cow. 406, and to carry out the views of Chancellor Jones, as expressed in his opinion in that case.　Revisers' notes, Edm. Rev. St. 397.　It was designed to settle the much-disputed point of the conclusive effect of a voluntary conveyance from a person indebted at the time the conveyance was made.　But it further provides, in substance, that a presumption arising from the want of a valuable consideration shall not, standing alone, be sufficient to authorize an adjudication that the conveyance was fraudulently made. The conveyance in the case now before us was made by a husband to his wife, and was admittedly without consideration.　Such a conveyance cannot be condemned without satisfactory proof of the fraudulent intent referred to in the statute.　The rule is aptly expressed in the case of Kain v. Larkin, 131 N. Y. 307, 30 N. E. 106, as follows, viz.:

"An owner of real estate can make a voluntary settlement thereof upon his wife and children without any consideration, provided he has ample property left to satisfy all the just claims of his creditors.　If the grantor remains solvent after the conveyance, and has sufficient property left to satisfy all his just debts, then the conveyance, whatever his intention was, cannot be a fraud upon his existing creditors;　and when a judgment creditor assails a conveyance made by the judgment debtor, he cannot cast upon the grantee the onus of showing good faith and of establishing that the grantor was solvent after the conveyance by simply showing that the deed was not founded upon a valuable consideration.　But the person assailing the deed assumes the burden of showing that it was executed in bad faith, and that it left the grantor insolvent, and without ample property to pay his existing debts and liabilities;　and so it has been repeatedly held,"—citing authorities.

The question in this case is whether the plaintiff met the requirements of the law with respect to the character and sufficiency of evidence to establish the fraudulent purpose of the grantor in making the conveyance of the particular property referred to in the complaint in this action, and we think he has.　The record discloses that there was an intent on his part to place his property in such a situation that it could not be resorted to for the collection of the particular indebtedness represented by the plaintiff in this action, or, to state it differently, that the grantor, by the conveyance attacked herein, intended to put the property transferred by it in such a situation that if this one particular creditor sought to enforce his claim, and recovered judgment upon it, this and other property would be beyond the reach of an execution.　That presents a feature of intended fraud, and it becomes necessary to examine the testimony to ascertain if it justifies this conclusion.　In making such examination, we are not confined simply to the condition of the proofs as they stood when the plaintiff's case in chief was closed.　We are to take the whole evidence as it was before the court below, and from it we find that some time preceding the 3d of March, 1893, the defendant

Horace Craighead began a series of acts with relation to his property which indicate a fixed purpose on his part to put in his wife's name, not only the land covered by this conveyance, but other valuable property, in view of the possible enforcement against him of the large claim represented by the plaintiff in this action. Enforcement of that claim was threatened some months before the date of the conveyance in question. Prior to the date of that conveyance the defendant Horace Craighead was engaged in business in the city of New York, and had a half interest in the capital used in that business. He bought real estate at Mamaroneck, in Westchester county; also, the lots involved in this action, in the city of New York. He also owned certain New Jersey land and certain mortgages,—some of them on Western property. The Mamaroneck property was transferred by him to his wife in 1892. During the course of that year, settlement of the claim upon which the plaintiff's judgment was subsequently recovered was demanded of Horace Craighead, and application for its adjustment made. A long correspondence between Craighead, his attorney, and the attorneys of the creditor in Boston followed. These letters all show an effort on the part of Craighead and his attorney to put off and delay the creditor. In March, 1893, the correspondence had reached that stage at which it became obvious that the creditor would not submit to further delay, and would proceed to enforce his demand by suit in the courts of New York. That claim was upon a written contract. Suit was brought, an answer was interposed, the action was tried, and from the pleadings in that action it is apparent that the defendant Horace Craighead had no defense whatever upon the merits. The claim was, as stated, a considerable one, and the feeling the defendant Horace Craighead had with reference to it is very marked. He says that he did not feel morally bound to pay it; that he thought it was "an iniquitous claim, from one end to the other"; and that he "still feels that he does not owe these people anything," but that they owe him, and that they were responsible for causing his salary to be reduced. With that claim impending, and a suit about to be brought, the first step was taken by Horace Craighead to dispose of this real property. As owner of these lots in the city of New York, he first mortgaged them to the Mutual Life Insurance Company for $35,000. That sum he received, depositing, he says, some of it in bank. Almost immediately after he transferred the lots, subject to the mortgage, to his wife. Now, at this time he claims to have been perfectly solvent, and to have been worth $60,000 in cash and other property, and, therefore, that he had abundant means to satisfy any claim that might be enforced against him. But what became of his property? It is, of course, immaterial that he became insolvent some time afterwards; but it is very material to trace the disposition of his other property, as throwing light upon the purpose with which the conveyance attacked in this action was made. The statement he gives of his financial situation at that time merely shows the possession of other property which also passed from him. The disappearance of his cash he accounts for by saying that he was engaged in speculating in stocks, and was losing money; he had lost money in his business; he made the mortgage because he wanted to use the money, and he says he believed he could make a good deal

more money. He swears he got the money on this mortgage for the purpose of enlarging his business, but then changed his mind, and went to speculating in stocks and lost it. But of his transactions in stocks we have no account. The cash realized on the mortgage utterly disappears. He dissolved his partnership in 1894, but there were no debts of the partnership left unpaid. After the transfer of the New York lots to his wife, he continued to manage the property. The deed to his wife was never put on record. He took from her a power of attorney, and, under that power of attorney, made conveyances of some of the lots, and received and used the money realized from the sales. His conduct with reference to these particular lots; his realization of part of their value by giving a mortgage; his retention of the proceeds of the mortgage; his concealment from the record that the conveyance had been made to his wife; his remaining, to all appearances, the owner of the property, and making sales of some of it; his receipt of the proceeds of the auction sale, realizing some $27,000; and his merely giving his wife a promissory note for that sum,—are the strongest evidences of a purpose to retain the actual ownership of this real estate, but to have the title to it so made that the land would be beyond the reach of his creditor. We are not limited to the consideration of the defendant's ostensible financial condition immediately after the conveyance was made, in order to ascertain whether he remained solvent. While subsequent insolvency will not avoid the voluntary deed, the disposition he made of his other property may furnish light upon the subject of his motive in making the particular conveyance attacked. The cash he claims to have had disappeared in the vague stock speculations. All his lands in New York, including his residence, he conveyed to his wife; his New Jersey property he conveyed to her for the debt he said he owed her on the $27,000 note, and he received a credit of $10,000 for it; all his bric-a-brac and books he also transferred to his wife; certain of the Western farm mortgages he also transferred to her,—all these transfers being made between March, 1892, and the time the plaintiff's judgment was affirmed by this court. 39 N. Y. Supp. 668. It seems to us fully established that there was a general purpose of this grantor to put his property beyond the reach of the plaintiff's claim. The conveyances attacked here, the defendant Horace Craighead claims, he intended only as a suitable provision for his wife. His idea of a suitable provision for his wife seems to have extended to putting in her name, or transferring to her, all his landed property before the plaintiff could reach it upon an execution, and after he (Craighead) had realized as much ready money as it was possible to obtain prior to the conveyance of the land being made. He did not remain solvent, in the sense in which that phrase is to be understood. He was scheming to rid himself of the title to his property, and the conveyance of the lots in question was one step in carrying out that scheme. The proof showed the fraudulent purpose, and the judgment should have been rendered for the plaintiff.

The judgment must be reversed, with costs, and judgment directed for the plaintiff as prayed for in the complaint, with costs. All concur.