MARGARET KAIN, as Administratrix, etc., Respondent, *v.* PATRICK LARKIN et al., Appellants.

It is not sufficient to condemn a conveyance of land as a fraud upon creditors of the grantor that it was not founded upon a valuable consideration (2 R. S. 137 § 1); other facts must be proved showing that the conveyance was made with a fraudulent intent.

The person assailing the conveyance assumes the burden of showing that it was executed in bad faith, and left the grantor insolvent and without ample property to pay his existing debts and liabilities.

The character of the transaction is to be determined by the circumstances surrounding the parties at the time, and the fact that months thereafter no property of the grantor could be found, upon which to levy an execution, and that he was then insolvent is insufficient to establish the fraud.

Every fact necessary for a plaintiff to prove in such a case, in order to set aside the deed, must be established by evidence competent as against

the grantee. The mere declarations of the grantor are not competent for this purpose.

An owner of real estate may make a voluntary settlement thereof upon his children, provided he has ample property left to satisfy all the just claims of his creditors.

In an action brought to set aside as fraudulent, as against creditors, a deed executed by defendant L., the following facts appeared: Plaintiff brought an action against L., who had killed plaintiff's intestate, to recover damages because thereof. At the time, L. had $1,400 on deposit in a savings bank and owned the premises conveyed by the deed in question. Within a few days thereafter, he drew out the money from the savings bank and re-deposited $1,200 thereof in the name of his wife, and he also executed and delivered a mortgage on the real estate to his brother. Said action resulted in a verdict and judgment for the defendant therein. While an appeal therefrom was pending, L. executed the deed in question, which was a quit-claim deed, to his daughter, defendant M., who was then a minor, the consideration expressed being natural love and affection and the sum of one dollar, and thereupon the brother executed a satisfaction of the mortgage. The judgment in favor of L. was reversed, and on a new trial plaintiff recovered. An execution issued on the judgment was returned unsatisfied more than eighteen months after the conveyance. There was no allegation in the complaint in this action, that the deposit and the real estate conveyed constituted substantially all of L.'s property, or that he was insolvent at the time of, or was rendered insolvent by the conveyance, and the trial court found there was no evidence that at the time of the conveyance, or before, L. did not have ample means to pay all claims against him including plaintiff's, but that when said judgment was recovered and execution issued, he did not have sufficient property to satisfy the same. *Held,* that plaintiff failed to establish fraud, and that a judgment in his favor was error.

A father may emancipate his minor child by parol, and thereafter make contracts with the child to compensate him for services, and services rendered under such a contract may be a valid and adequate consideration for a conveyance of real estate by the father to the child.

(Argued February 2, 1892; decided March 1, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made December 28, 1891, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Circuit without a jury.

In November, 1886, the defendant Patrick Larkin, then a police officer in the city of Kingston, killed the plaintiff's intes-

tate, David Kain. Thereafter the plaintiff was appointed administratrix of the estate of the deceased, who was her son; and on the 6th day of January, 1887, she brought an action against Patrick Larkin to recover pecuniary damages suffered by the next of kin of her son from his death.

At that time Patrick Larkin had on deposit in a savings bank about $1,400, and he owned real estate in the city of Kingston worth $3,000. On the 8th day of January, 1887, he drew from the savings bank all his money and re-deposited $1,200 thereof in the same bank in the name of his wife, who was then living, but has since died; and on the 12th day of January, 1887, he executed and delivered to his brother Michael a mortgage upon the real estate for $3,000. The plaintiff's action against Patrick Larkin was brought to trial in November, 1887, and resulted in a verdict and judgment in favor of the defendant. The plaintiff appealed from the judgment to the General Term, and on May 1, 1889, while that appeal was pending Patrick Larkin executed and delivered a quit claim deed of his real estate to his only child, the defendant, Maria E. Larkin, who was then under the age of twenty-one years. Thereafter, on the 27th day of May, 1889, Michael Larkin executed and delivered to his brother Patrick a satisfaction of the mortgage for $3,000, above mentioned. The consideration recited in the deed to the defendant Maria was in these words : " In consideration of natural love and affection and the sum of one dollar."

In February, 1890, the judgment in favor of Patrick Larkin was reversed and a new trial was granted. The new trial was had and resulted in a verdict in favor of the plaintiff for $800 damages, for which sum judgment was entered in October, 1890, and an execution issued on said judgment was returned unsatisfied. Patrick Larkin was indicted for the homicide and was convicted and sentenced to prison in 1887, where he remained about a year, when he was pardoned and released from prison. This action was commenced in February, 1891, to set aside the deed from Patrick Larkin to his daughter on the ground that it was executed and delivered to

her for the purpose of hindering, delaying and defrauding the creditors of the grantor. The complaint alleges the recovery of the judgment by the plaintiff on the cause of action which accrued on the 21st day of November, 1886; that the defendant Patrick Larkin, at that time owned the real estate and had the deposit in the savings bank; that he drew the money from the savings bank, re-deposited a portion thereof, executed the mortgage, and subsequently conveyed the real estate as hereinbefore mentioned. The complaint further alleges that the conveyance of the real estate was made to cover up and conceal the right and title therein of Patrick Larkin, and for an inadequate consideration, and with the intent to hinder, delay and defraud the plaintiff of her just rights, damages and claims against him; that the deed was executed for the consideration therein expressed and for the further consideration not written therein, and made orally between the parties thereto at the delivery thereof to the effect that Maria E. Larkin should take care of and furnish support to Patrick Larkin during his old age. The answer denied the fraud alleged in the complaint, and also that the deed was without any consideration, or for an inadequate consideration, and alleged on the contrary that it was executed in good faith and for a sufficient and valuable consideration. The action was brought to trial and resulted in a judgment in favor of the plaintiff, which has been affirmed at the General Term.

*F. A. Westbrook* for appellants. Plaintiff failed to prove a fraudulent conveyance. (*Schultz* v. *Hoagland*, 85 N. Y. 467; *Baird* v. *Mayor, etc.*, 96 id. 567; *Bernheimer* v. *Rindskopf*, 116 id. 436; *Morris* v. *Talcott*, 96 id. 107; *Jaeger* v. *Kelley*, 52 id. 274; Penal Code, § 586; *Erwin* v. *Voorhees*, 26 Barb. 127; *Gage* v. *Parker*, 25 id. 145, 146; *Dascomb* v. *R. R. Co.*, 27 id. 228; *Stone* v. *Brown*, 116 Ind. 78; *Flint* v. *Sheldon*, 13 Mass. 443; *Corse* v. *Peck*, 102 N. Y. 513; *Howard* v. *Rynearson*, 50 Mich. 307; *Mahoney* v. *Hunter*, 30 Ind. 246; *Snyder* v. *Christ*, 39 Penn. St. 499; *Harlan* v. *Maglaughlin*, 90 id. 299; *Todd* v. *Nelson*, 109 N. Y. 316; *Warren*

v. *Wilder*, 114 id. 215; *Parker* v. *Conner*, 93 id. 118; *Stearns* v. *Gage*, 79 id. 102.) At the time of the conveyance and over a year before, the suit of Mrs. Kain against Larkin had been determined in his favor. (*McNulty* v. *Hurd*, 72 N. Y. 521; *Parkhurst* v. *Berdell*, 110 id. 392.) It is not alleged in the complaint nor proven on the trial that Patrick Larkin did not have ample and other means at the time of the delivery of the deed than the property in question. This is fatal to plaintiff's cause of action in every aspect. (*Pence* v. *Croan*, 51 Ind. 338; *Bank* v. *Mead*, 92 N. Y. 637, 638; *Wilbur* v. *Fradenburgh*, 52 Barb. 480; *Emmerick* v. *Hefferan*, 21 J. & S. 102; *Sherman* v. *Hogland*, 54 Ind. 584; *King* v. *Thompson*, 9 Pet. [U. S.] 204; *Usher* v. *Hazeltine*, 5 Me. 474; *Whitesel* v. *Hiney*, 62 Ind. 168.) This conveyance should stand considered merely as a settlement on the daughter, or as a voluntary conveyance to her. (*Holden* v. *Burnham*, 63 N. Y. 75; *Usher* v. *Hazeltine*, 5 Me. 474; *Hall* v. *Sands*, 52 id. 355; *Evans* v. *Lewis*, 30 Ohio St. 11; *Dygert* v. *Remerschnider*, 32 N. Y. 650; *Stevens* v. *Works*, 81 Ind. 449; *Quimby* v. *Dill*, 40 Me. 528; *Cottrell* v. *Smith*, 63 Iowa, 181.) The conveyance in question must be considered as one for valuable consideration. The court erred in holding that it was not. (*Truesdell* v. *Sarles*, 104 N. Y. 167; *Jackson* v. *Peek*, 4 Wend. 300, 304; *Dygert* v. *Remerschnider*, 32 N. Y. 649; *Washband* v. *Washband*, 27 Conn. 430; Schouler on Dom. Rel. § 274; *Davis* v. *Gallagher*, 55 Hun, 594, 595; *Green* v. *Roberts*, 47 Barb. 521; *Stanley* v. *Bank*, 115 N. Y. 123; *Smith* v. *Hahn*, 30 N. Y. S. R. 349; *Foot* v. *Gooding*, 9 Barb. 371; *Hall* v. *Hall*, 44 N. H. 293, 297; *Beards* v. *Wheeler*, 76 N. Y. 213; *Manning* v. *Beck*, 41 N. Y. S. R. 199, 208.) Plaintiff entirely failed to show that Maria E. Larkin had knowledge of any intended fraud. (*Truesdell* v. *Searles*, 104 N. Y. 167; *Parker* v. *Conner*, 93 id. 118; *Stearns* v. *Gage*, 79 id. 102; *Dudley* v. *Danforth*, 61 id. 626; *Carpenter* v. *Muren*, 42 Barb. 303; *Manning* v. *Beck*, 41 N. Y. S. R. 208; *Hine* v. *Bowie*, 114 N. Y. 356; Code Civ. Pro. § 1902; Penal Code, § 586.) It was error to admit in

evidence the statements of Patrick Larkin made in supplementary proceedings. (*Burnham* v. *Brennan*, 74 N. Y. 597; *Tilson* v. *Terwilliger*, 56 id. 273; *Cuyler* v. *McCartney*, 40 id. 226; *Tabor* v. *VanTassell*, 86 id. 643; *Vrooman* v. *King*, 36 id. 477; *Hutchins* v. *Hutchins*, 98 id. 64; *McDuffie* v. *Clark*, 39 Hun, 170; *Dodge* v. *Trust Co.*, 93 U. S. 383; *Fox* v. *Moyer*, 54 N. Y. 130; *Campbell* v. *Jones*, 25 Minn. 155, 159; *Smith* v. *Grim*, 26 Penn. St. 95; *Buffington* v. *Harvey*, 5 Otto, 103; *Bergen* v. *Carman*, 79 N. Y. 146; *Foote* v. *Bucher*, 78 id. 157.) It was error to allow the witness Stephan to narrate the testimony on supplementary proceedings and to corroborate his narrative by reading selected detached portions of this testimony. (Code Civ. Pro. §§ 2242, 2460; *People* v. *Hinchman*, 75 Mich. 587; Greenl. on Ev. § 86; *Haddow* v. *Lundy*, 59 N. Y. 330; *Pruden* v. *Alden*, 23 Pick. 187; *Waters* v. *Gilbert*, 2 Cush. 31; *Foote* v. *Bently*, 44 N. Y. 170, 171; *Steamship Co.* v. *Otis*, 100 id. 453; *State* v. *Thompson*, 79 Iowa, 703; *Carradine* v. *Hotchiss*, 120 N. Y. 608, 613; *Russell* v. *R. R. Co.*, 17 id. 134; *Madden* v. *Bank*, 114 id. 285; *Driggs* v. *Smith*, 4 J. & S. 283; *Young* v. *Catlett*, 6 Duer, 437.) Plaintiff cannot maintain this action as she does not come within the provisions of the statute of fraudulent conveyances. (*Green* v. *Adams*, 59 Vt. 602.)

*G. R. Adams* for respondent. The plaintiff is within the provisions of the statute which declares conveyances made with intent to hinder, delay or defraud "other persons of their lawful suits, damages," void as to them, as well as void as to creditors. (2 R. S. 137, § 1; *Martin* v. *Walker*, 12 Hun, 46; *Ford* v. *Johnston*, 7 id. 563; *Pendleton* v. *Hughes*, 65 Barb. 136; *Nat. Bank* v. *Dreyfus*, 96 N. Y. 676.) A voluntary conveyance in consideration of receiving care and support during the life of the grantor, is fraudulent and void as to the creditors of such grantor. (*Todd* v. *Monell*, 19 Hun, 362; *Robinson* v. *Stewart*, 10 N. Y. 189; *Young* v. *Heermans*, 66 id. 374; *Cole* v. *Tyler*, 65 id. 78; *Fox* v. *Moyer*, 54 id. 125; *Erickson* v. *Quinn*, 47 id. 410; *R. W. Co.* v. *Fielding*, 31

Hun, 280; *Coleman* v. *Burr*, 93 N. Y. 17.) The learned judge, to whom the evidence presented inferences as to the facts, could properly find the same in disregard of the testimony of the defendant Marie E. Larkin, she being an interested witness. (*McNulty* v. *Hurd*, 86 N. Y. 553; *Elwood* v. *W. U. T. Co.*, 45 id. 549; *Kavanagh* v. *Wilson*, 70 id. 177, 179.) On the pleadings the plaintiff is entitled to the judgment granted. (Code Civ. Pro. § 522; *Potter* v. *Smith*, 70 N. Y. 299; *Clark* v. *Dillon*, 37 id. 370; *Fleischmann* v. *Stern*, 90 id. 110; *Coleman* v. *Burr*, 93 id. 31.) The declarations of the defendants were properly proven, by the oral testimony of the witness who heard them. (*Thurman* v. *Mosher*, 1 Hun, 344, 348; *Halsey* v. *Sinsebaugh*, 16 N. Y. 485; *Guy* v. *Mead*, 22 id. 462; *Philbin* v. *Patrick*, 6 Abb. [N. S.] 284; *Bigelow* v. *Hall*, 91 N. Y. 145; *Wright* v. *Nostrand*, 94 id. 41; Code Civ. Pro. § 2444; *Pickard* v. *Collins*, 23 Barb. 444.) The action was a judgment creditor's action in which the statute expressly makes "the judgment debtor and any other person," the parties to the action. (Code Civ. Pro. § 1871; *Reed* v. *Stryker*, 12 Abb. Pr. 47; *Wright* v. *Nostrand*, 94 N. Y. 31; *Clark* v. *Moshier*, 107 id. 118.) The decision and judgment properly appointed a receiver, and directed the defendants to convey property to such receiver. (Code Civ. Pro. § 1877; *U. N. Bank* v. *Warren*, 12 Hun, 306; *Kennedy* v. *Brandon*, 4 id. 642.)

EARL, Ch. J. There was a fatal defect in the plaintiff's proof to establish the allegation in the complaint that the deed from Patrick Larkin conveying his real estate to his daughter was executed for the purpose of hindering, delaying and defrauding his creditors.

It is provided in the Revised Statutes (2 R. S. p. 137, § 1) that every conveyance of land made with the intent to hinder, delay or defraud creditors of their lawful suits, damages, forfeitures, debts or demands, as against the person so hindered, delayed or defrauded, shall be void; and in section 4 it is provided that the question of fraudulent intent in such a case

" shall be deemed a question of fact and not of law; nor shall any conveyance or charge be adjudged fraudulent as against creditors or purchasers, solely on the ground that it was not founded on a valuable consideration."   Thus, by the express terms of the statute, it is not sufficient to condemn a convey- ance of land as a fraud upon creditors that it was not founded on a valuable consideration.   A person assailing such a con- veyance must go further and show by other evidence that it was made with the fraudulent intent condemned in the statute. An owner of real estate can make a voluntary settlement thereof upon his wife and children without any consideration, provided he has ample property left to satisfy all the just claims of his creditors.   If the grantor remains solvent after the conveyance and has sufficient property left to satisfy all his just debts, then the conveyance, whatever his intention was, cannot be a fraud upon his existing creditors; and when a judgment creditor assails a conveyance made by the judgment debtor, he cannot cast upon the grantee the *onus* of showing good faith and of establishing that the grantor was solvent after the conveyance by simply showing that the deed was not founded upon a valuable consideration.   But the person assail- ing the deed assumes the burden of showing that it was executed in bad faith, and that it left the grantor insolvent and without ample property to pay his existing debts and liabilities; and so it has been repeatedly held.   (*Pence* v. *Croan,* 51 Ind. 338; *Sherman* v. *Hogland,* 54 id. 579; *Whitesel* v. *Hiney,* 62 id. 168; *McCole* v. *Loehr,* 79 id. 432; *Wilbur* v. *Fraden- burgh,* 52 Barb. 480; *Dygert* v. *Remerschnider,* 32 N. Y. 637; *Holden* v. *Burnham,* 63 id. 74; *Bank* v. *Mead,* 92 id. 637.) Here there was no allegation in the complaint that the money deposisted in the savings bank and the real estate conveyed by the judgment debtor to his daughter, constituted substantially all the property he had, or that he was insolvent at the time of the conveyance, or that he was thereby rendered insolvent. And there was no allegation in the complaint that he owed any debts, except the liability which he incurred by killing the plaintiff's intestate.   The trial court found that " there

is no evidence that at the time of giving the deed he was indebted to any person, except so far as his liability to this plaintiff might be regarded as an indebtedness;" and that "it is not shown by the evidence that at the time of the execution of said deed, or before, said Patrick Larkin did not have ample and sufficient pecuniary means and property to pay all claims and demands against him, including the claim subsequently adjudged by the jury in October, 1890. But the transfer of his real and personal (if valid), would so divest him of his property that he had not sufficient to satisfy the judgment which plaintiff obtained." By the latter part of this finding the trial judge meant that Larkin at the time of the recovery of the judgment by the plaintiff against him, and the issuing and return of the execution thereon, which was about eighteen months after he had executed the deed to his daughter, then did not have sufficient property to satisfy the judgment and execution. But the fact that the defendant, after the expenses in the action brought by the plaintiff against him, after he had been indicted, tried and convicted for the homicide, after he had been confined a year in prison, and after he had lost and buried his wife, was found not to have any property to pay the judgment, is not sufficient evidence that he did not have ample property left to satisfy plaintiff's claim immediately after giving the deed to his daughter on the 1st day of May, 1889, nearly eighteen months before. It was said in *Sherman* v. *Hogland (supra)*: "We do not think it sufficient to charge that some months or years after the conveyance was executed no other property could be found on which to levy an execution, or that at some subsequent time it was ascertained that the debtor had become wholly insolvent." In *McCole* v. *Loehr (supra)* it was said: "The allegation that the grantor died hopelessly insolvent does not make the complaint sufficient. The character of a transaction is to be determined by the circumstances surrounding the parties *at the time* it took place. The validity of a conveyance does not depend upon subsequent events. The question in such cases is the financial condition of the grantor at the time, for if then

solvent, his subsequent insolvency will not invalidate the conveyance."

And in *Whitesel* v. *Hiney* (*supra*), it was said that showing the financial condition of the grantor fifteen months after the conveyance was insufficient.    In *Pence* v. *Crown* (*supra*), it was said : " We cannot think that when such a party has shown that the conveyance was made without a valuable consideration, the grantee must then assume the *onus* of proving that the deed was made in good faith, by showing that the grantor had other means with which to pay his debts, or some other fact to rebut an inference of fraud.    Such a rule would be in effect to abrogate the statute and entitle the party attacking the conveyance to have it set aside by showing merely that it was not founded upon a valuable consideration, which the statute prohibits."

Our opinion, therefore, is, that upon the allegations in the complaint and the proofs upon the trial, and the findings of the trial judge, the plaintiff could not successfully assail this deed.    It is quite probable that Patrick Larkin did divest himself of all his property by the disposition made of his deposit in the savings bank and the conveyance of his real estate.    But that should not be left to mere inference.    If true, it is capable of proof, and the plaintiff who comes into court alleging fraud and assailing the deed therefor, should furnish the proof.

Upon the trial but four witnesses were sworn, two of whom testified only to the value of the real estate.    A witness by the name of Frederick Stephan was sworn on behalf of the plaintiff, and testified that he was the referee appointed to take the examination of Patrick Larkin in supplementary proceedings instituted against him by this plaintiff after her execution had been returned unsatisfied upon her judgment against him.    It appeared that Stephan, in pursuance of the order of the court, had taken Larkin's examination ; had reduced it to writing and read it over to him, and that Larkin then subscribed it ; that after it was thus subscribed, it was delivered by Stephan to the plaintiff's attorney for further proceedings thereon by him.

Upon this trial, for the purpose of proving the statements made by Larkin as to the purpose for which he gave the deed of the land to his daughter, and the circumstances attending the execution and delivery of the deed, and the consideration upon which it was executed, the plaintiff called Stephan, and he was asked to state orally what Patrick Larkin had testified to upon the examination which had thus been reduced to writing and signed by him. The defendant Maria Larkin objected that the evidence was not competent as against her, and both defendants objected to the evidence as incompetent, on the ground that it was secondary, and that the examination which was then in the possession of the witness should be produced and put in evidence for the purpose of showing the statements made by Larkin on that examination. The trial judge overruled the objection, and while he held that the evidence was not competent, and that he would not receive it as against Maria Larkin, he held that it was competent as against the defendant Patrick Larkin, and he decided that it was not necessary to prove those statements by putting in evidence the examination as reduced to writing and signed. There can be no question that it was erroneous to permit the witness to give oral evidence of the statements made by Patrick Larkin upon that examination. The examination had been purposely reduced to writing, and was required to be, that it might be subsequently reported to the judge who appointed the referee and be used in any further proceeding which the plaintiff might base thereon. That it might be accurate and reliable for any subsequent use, it was read over to Larkin, and he subscribed it, thus verifying it by his signature. Thereafter the written examination thus subscribed was the best evidence of the statements which it contained. If Larkin had, after that examination, been indicted for perjury, for making a false statement in answer to questions put to him at that time, it cannot be doubted that he could have made a successful defense to the indictment by showing that the alleged false answers were not contained in the examination as reduced to writing and subscribed by him. After the examination had been read over to

and subscribed by him, it constituted the whole of the examination, and no statements made by him and not contained therein would be any part thereof. If he had been examined and his examination reduced to writing and not subscribed by him, undoubtedly any person who heard his examination could testify to any statements made by him, and such written examination would not be the primary evidence. So, any person who hears a witness testify upon a trial, although the evidence is taken down by a stenographer, may undoubtedly testify to statements made by the witness. But where the examination is reduced to writing and read over to and subscribed by the witness for the purpose of making an accurate and reliable record of the evidence given by him, then the examination thus subscribed is the primary evidence, and it would violate the fundamental rules of evidence to permit witnesses to be called and give from their memory evidence of statements thus made. If the statements which the plaintiff proved by Stephen had been contained in a letter written by Larkin, everyone would admit that oral evidence could not be given of the contents of the letter, but that the letter, if it could be found and produced, would be the primary evidence, and would have to be resorted to to prove its contents. This evidence violated the rule which requires a party to produce the best evidence of which the case in its nature is susceptible. The rule is intended to prevent fraud and mistake, and is essential to the pure administration of justice. It forbids the introduction of substitutionary or secondary evidence when the original or primary evidence can be had. Where statements are formally reduced to writing for the express purpose of making a record of them, and they are subscribed by the parties, the writing thus subscribed is the primary evidence, and when it is in the possession of a party, or can be produced, it alone furnishes the competent evidence of its contents. In *Vincent* v. *Cole* (1 M. & M. 258), Lord TENTERDEN said: "I have always acted most strictly on the rule that what is in writing shall only be proved by the writing itself. My experience has taught me the danger of relying on the

recollection of witnesses, however honest, as to the contents of written instruments. They may be so easily mistaken that I think the purposes of justice require the strict enforcement of· the rule." In *People* v. *Hinchman* (75 Mich. 587), the defendant was examined before a justice of the peace who held him for trial at the Circuit. His examination was taken under oath before the justice and reduced to writing and was filed. Upon his subsequent trial at the Circuit, his examination was presented in court and the court admitted the oral testimony of the complaining witness as to what Hinchman testified to before the committing magistrate, as admissions made by him in the case; and it was held that that was error. The learned judge writing the opinion said: "There was no claim made that the written deposition did not contain all the testimony given by the defendant on the examination. The written deposition was the best evidence of what Hinchman testified to, and when it appeared that it was present in court it was the only admissible evidence of that fact. And it did not cure the error for the prosecutor to say that it was present and he could read from deposition if counsel desired. It was sufficient for the counsel to object to the introduction of the improper testimony, and he was not obliged to express his desire to have the deposition read." Further illustrations of the rule·which condemns this oral evidence will be found in *Hamilton* v. *People* (29 Mich. 195); *Newcomb* v. *Griswold* (24 N. Y. 298); *White* v. *Price* (108 id. 661).

The trial judge very properly held that the declarations of the grantor made subsequently to the execution of the deed, and no part of the *res gestæ*, were not competent as against the grantee, while if properly proved they would be competent as․ against him. Every fact which it is necessary for the plaintiff in such a case to establish, in order to set aside the deed, must be established by evidence competent as against the grantee, and the mere declarations of the grantor are not competent to establish any fact as against the grantee. And so we have uniformly held. (*Cuyler* v. *McCartney*, 40 N. Y. 221.)

We think we can see in the findings of the trial judge that

while he ruled that these declarations of the grantor were not competent as against the grantee, he allowed them some influence in his findings of fact upon which his judgment was based.

The defendant Patrick Larkin was twice married. His first wife was the mother of Maria E. Larkin. Maria, as a witness on her own behalf, testified that subsequently to the death of her mother, her father frequently promised that she should have this real estate, and that he gave her her time, and said to her that her wages should be her own. She thereafter earned money as a dressmaker, and contributed to the support of the family, consisting of her father, her step-mother and herself. After her father had committed the homicide she went to New York and engaged in dressmaking there, and while there her father requested her to come home and take care of her step-mother who was then sick and promised that she should have a conveyance of the real estate; and she came home and took care of her step-mother and contributed largely to the expense of keeping up the household. According to her evidence, in consideration of her contributions to the support of her father's family he frequently promised that she should have this real estate; and she testified that it was in pursuance of that agreement that he conveyed it to her. Upon this evidence of Maria, among the conclusions of law made by the trial judge we find the following: "That in so far as said deed was given for the services of the defendant Maria E. Larkin, rendered for her father in his family while a minor, the same were an inadequate consideration therefor as against this plaintiff, as such services belonged to her father." If the learned judge meant to hold, and did hold, that Larkin could not make an agreement with his minor daughter to compensate her for her services, and that services rendered under such an agreement could not be a valid and adequate consideration for a conveyance of real estate to her, he erred, because it is the undoubted rule of law in this state that a father may emancipate his minor child, even by parole, and after such emancipation may make contracts with him

and become liable to pay him for wages, and after such emancipation the child has the right to his own wages, the disposition of his own time, and, in a great measure, the control of his own person. In Schouler's Domestic Relations (3d ed.), section 268, it is said; " The minor who is released from his father's service stands as to his contracts for labor either with strangers or with him, upon the same footing as if he had arrived at full age ; and such being the case the father may himself contract to employ and pay the child for his services, and be bound in consequence like any stranger to fulfill his agreement." And the text is sustained by ample authority.

We have, therefore, reached the conclusion on the whole case, that the ends of justice require that this action should be tried again, and that the rules of law which we have herein referred to should be properly applied and enforced.

The judgment should, therefore, be reversed and a new trial granted, costs to abide event.

All concur.

Judgment reversed. _____