(85 Misc. Rep. 178)

### BUSHBY v. BERKELEY et al.

(Supreme Court, Special Term, New York County. April, 1914.)

1. FRAUDULENT CONVEYANCES (§ 295*)—PROOF—TESTIMONY OF DEFENDANT.

The testimony of defendant in an action to set aside conveyances as in fraud of creditors was insufficient to overcome the prima facie case made out by plaintiff, where defendant's deportment on the witness stand and his refusal in a prior proceeding to answer questions relative to transfers of his property, on the ground that the answers might tend to incriminate him, together with the fact that he was yet in physical possession of the property, wholly discredited his testimony.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 867–875; Dec. Dig. § 295.*]

2. FRAUDULENT CONVEYANCES (§ 23*)—PRESUMPTION—RESIDENCE OF GRANTEE.

Conveyances made by a judgment debtor, in which the residence of the grantee was omitted, in violation of Laws 1896, c. 547, § 223, were presumptively fraudulent.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. § 31; Dec. Dig. § 23.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. FRAUDULENT CONVEYANCES (§ 74*)—PRESUMPTION.

A voluntary conveyance by a debtor is presumptively fraudulent· as ,to existing creditors.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 186–190; Dec. Dig. § 74.*]

4. EVIDENCE (§ 230*)—DECLARATIONS OF GRANTOR—COMPETENCY.

Declarations of a grantor, made subsequent to conveyances sought to be set aside as fraudulent, were competent as against his grantee.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 835–851; Dec. Dig. § 230.*]

Action by James C. Bushby against Lancelot M. Berkeley and another to set aside as fraudulent certain conveyances. Judgment for plaintiff.

See, also, 159 App. Div. 938, 145 N. Y. Supp. 1115.

Max D. Steuer, of New York City, for plaintiff.

Lancelot M. Berkeley, of New York City, for defendants.

COHALAN, J.   [1] The plaintiff, a judgment creditor, sues herein to set aside as fraudulent certain conveyances made by one to the other of the defendants.   The real parties in interest were law partners for about nine years, and dissolved the copartnership in December, 1906.   The defendant Lancelot M. Berkeley undertook to liquidate the business of the firm and to account to the plaintiff for his share therein.   In January, 1908, an action was commenced for a copartnership accounting.   The plaintiff was successful in that action, and recovered against his former partner a money judgment of $5,893.34, which was affirmed on appeal.   An execution issued thereon has been returned wholly unsatisfied.   The litigation between the former partners has assumed various forms, and in the United States District Court it was characterized as a "disgraceful professional squabble."   Matter of Berkeley, 203 Fed. 10, 121 C. C. A. 359.   I am convinced from the evidence in the case that Lancelot M. Berkeley, for the purpose of rendering himself execution proof, has maintained fictitious bank accounts; that he has transferred his real property to a mythical person bearing the same name as that borne by his father and his brother; that to escape liability to the plaintiff he has transferred fees of the firm to his stenographer; and that his testimony is unworthy of belief.

[2] In the United States District Court, where he was successful in a test with regard to his solvency, it was apparent, and the court held, that he had transferred his property to his father, Robert Carter Berkeley, a resident of West Virginia.   In his testimony in that proceeding, as well as in this case, he refused to answer questions on the ground that the answers might tend to incriminate him.   He now asserts that the name of his grantee, the codefendant for whom he appears as attorney, is Robert Clay Berkeley; that the codefendant is not his father or brother, and is not in any way related to him.   In the three deeds in evidence from Lancelot M. Berkeley to Robert C. Berkeley the residence of the grantee is omitted.   As a lawyer he presumably knew the requirements of the law as to inserting in a deed the residence of the grantee.   Laws 1896, c. 547, § 223.   The deposi-

tion of the aunt of the defendant, who resides in Morgantown, in West Virginia, whence he came, recites that she never knew of a Robert Clay Berkeley in the Berkeley family. It is obvious that the grantee, if there ever was a real transfer, is the grantor's father, and that the personage Robert Clay Berkeley is a pure invention. This man is physically never in evidence. He was never served with papers in this action, but his codefendant and grantor, Lancelot M. Berkeley, voluntarily appeared herein as his attorney. He did not appear upon the trial of the action. Lancelot M. Berkeley testified that he told him not to appear at the trial. All assignments that might bear his signature or disclose his identity had been removed from the files of the Municipal Court by an agent of Lancelot M. Berkeley and have not been produced herein. The alleged books of account between the grantor and grantee are said by Lancelot M. Berkeley to have been delivered to him, and he is said by the same witness to have gone abroad to some unnamed place, leaving the defense to the title of property of the value of $150,000 in the discretion and control of his grantor. No paper bearing his signature has been produced. No person who ever claims to have seen him, with the exception of the codefendant, Lancelot M. Berkeley, has testified in the case. He is alleged by Lancelot M. Berkeley to have been born somewhere in England, and it is said, despite the similarity of names, that he is not a relative of his codefendant, and is unknown to other members of the Berkeley family in this country. He is said to work independently as some sort of engineer, but where and by whom he is or has been employed are not disclosed. His residence in this city—hotel or other place of abode—or in any other city in which Lancelot M. Berkeley testifies that he lived is not known to his codefendant. He is said to have first become known to the defendant Lancelot M. Berkeley, shortly before the property was transferred to him, by calling at his office while looking for an investment in New York city real estate, and very shortly thereafter he is alleged to have made the purchase from Lancelot M. Berkeley of all the real property to which Lancelot M. Berkeley had title. The purchase price was paid by giving $10,000 in cash and the balance in purchase-money mortgages, which have since been paid in full.

It is scarcely conceivable that the defendant Robert C. Berkeley, for whom Lancelot M. Berkeley collects rents and appears as attorney, if he were the practical stranger that Lancelot M. Berkeley alleges him to be, would give unlimited powers with relation to his property to Lancelot M. Berkeley; that he would permit him to deposit the rents collected from property indiscriminately in his own account and in the account of a decedent's estate, which, after judicial settlement, was evidently reopened for this precise purpose. All the evidence points unerringly to the conclusion that Robert Clay Berkeley has no existence in reality. In addition to this, the deportment of Lancelot M. Berkeley on the stand indicates that he is not to be believed. His answers were generally evasive and negative, and his frequent refuge was in the words, "I do not remember." He could not tell for what purposes the checks of his lessee were drawn, whether the payment of $20,000 made by him on the mortgage was by cash or by check, what

bank accounts he had in November, 1908, or what he did with the moneys received for the rents of the property, although he paid the taxes and water rates on the property down to date.

It is provided in the Real Property Law of 1896 (chapter 547, §§ 227 and 229), re-enacted in 1909 (chapter 52 [Consol. Laws, c. 50], §§ 263–265) that a conveyance of real property with intent to hinder, delay, or defraud creditors is void, and that the question of fraudulent intent is one of fact. The sole question for decision in this case is whether or not Lancelot M. Berkeley transferred the property described in the complaint with an intent to defraud the plaintiff. On this issue the opinion of Hough, J., when a petition in bankruptcy was considered in the United States District Court (Matter of Berkeley, 203 Fed. 10, 121 C. C. A. 362), reads:

"Upon the whole case I am of opinion that the transfer from son to father was a conveyance in fraud of creditors, and am of opinion that such conveyance was made in order to prevent, if possible, what Berkeley believed to be at the time Bushby's intention, namely, to saddle him with all the claims from ex-clients that he (Bushby) could induce or procure to advance and press their claims. Whether this suspicion of Bushby was correct is not to the point, and no finding is made thereon, but I am convinced that this was Berkeley's motive, and it was in contravention of the statute."

[3] There is no question that at the time these conveyances were made the defendant Lancelot M. Berkeley was indebted to the plaintiff, and the rule of law as stated in Smith v. Reid, 134 N. Y. 569, 31 N. E. 1082, is that a voluntary conveyance by one indebted at the time the conveyance is made is presumptively fraudulent as against existing creditors. In that case the conveyance of real property was made at the time the grantor was indebted. Subsequently a judgment was recovered upon such indebtedness, and an execution issued thereon was returned unsatisfied. The court held that, the fraudulent character of the conveyance having been established, the plaintiff was entitled to a judgment adjudging the deed to be illegal and void, and that the conveyance was a nullity as to the creditor while the fraudulent grantee held title. In this case the fraudulent grantee holds the record title, and the fraudulent grantor holds the physical possession, and appears in this action for himself and as attorney for his grantee.

The defendant relies on the authority of Kain v. Larkin, 131 N. Y. 300, 30 N. E. 105, to defeat the plaintiff's claim in this action. The rule in that case required a creditor attacking a conveyance to prove that the grantor was left without sufficient property to meet existing liabilities. However, that rule was specifically overruled in the case of Kerker v. Levy, 206 N. Y. 109, 99 N. E. 181. Hence the doctrine enunciated in the case of Smith v. Reid, supra, is applicable, and must be regarded as controlling on the facts proved in the case at bar.

[4] The defendant Lancelot M. Berkeley asserts that the declarations he may have made with regard to the property subsequently to the transfers are not binding upon the grantee. In the case of Loos v. Wilkinson, 110 N. Y. 210, 18 N. E. 99, 1 L. R. A. 250, it was held that the declarations of the grantors made after the transfer were competent against the grantee, because the grantors remained in possession of the property and collected the rents. This is precisely what

Lancelot M. Berkeley did in this case. The plaintiff has proved allegations sufficient to establish his right to relief. The burden of producing a mythical defendant did not rest on him. The evidence points conclusively to the fact that Lancelot M. Berkeley is the real owner of the properties in question, notwithstanding the recorded transfers thereof to Robert C. Berkeley. It would be inequitable and a hardship if this lawyer defendant, by such testimony as he gave in this case, could defeat the plaintiff's cause of action. Judgment for the plaintiff.

Judgment for plaintiff.