CLIFTON H. LANDON, as Trustee in Bankruptcy of CHARLES A. FISHER, Bankrupt, Plaintiff, *v.* CHARLES A. FISHER and INEZ E. FISHER, Defendants.

Supreme Court, Jefferson Special Term, August, 1923.

Bankruptcy — action by trustee to set aside conveyance of real estate by bankrupt to himself and wife — adjudication over eighteen months after conveyance — when no intent shown to defraud creditors — trustee cannot maintain action to impress lien in behalf of a particular class of creditors.

While a trustee in bankruptcy, as representing all the creditors of the bankrupt, may bring an action to set aside a transfer of real or personal property made with intent to hinder, delay and defraud creditors, even where the transfer was made more than four months prior to the adjudication in bankruptcy, he cannot maintain an action to impress a lien in behalf of a particular class of creditors.

A trustee in bankruptcy brought an action to set aside a deed of conveyance to the bankrupt and his wife as tenants by the entireties and to cancel the record thereof on the ground that the title was so taken with intent to hinder, delay and defraud the creditors of the bankrupt and was made and accepted in contemplation of his insolvency, and a decree was asked that plaintiff be adjudged to be the owner in fee and entitled to the possession of the property described in the deed, subject only to the inchoate right of dower therein of the bankrupt's wife.

The plaintiff also sought on the same ground a decree setting aside a gift by the bankrupt to his wife of a player piano and adjudging that plaintiff is the owner of the same. The proofs in the case which as to the real estate were submitted under section 94 of the Real Property Law were introduced upon the general theory that the action was brought to set aside the transfers as fraudulent as against creditors, but the evidence disclosed no intent on the part of either of the defendants to hinder, delay or defraud the creditors, present or future, of the bankrupt. The adjudication in bankruptcy was made more than eighteen months after the execution and delivery of the deed of conveyance. *Held,* that under the statute the action was one to impress a lien in behalf of the creditors of the person paying the consideration, at the time of the voluntary transfer, and the right to pursue such remedy did not pass to the trustee in bankruptcy, for while section 70(e) of the Bankruptcy Act authorizes the trustee to " avoid any transfer by the bankrupt of his property which any creditor of such bank-

rupt might have avoided " it does not authorize an action to impress a trust in behalf of one who was a creditor " at the time " of the alleged fraudulent transfer.

A husband cannot by investing his money in land, and taking the title to himself and wife as tenants by the entirety, prevent the transaction from being attacked as in fraud of his creditors to the same extent as any other conveyence. It having been established, however, that the bankrupt was solvent at the time of the execution and delivery of the deed in question, that there was no intent to hinder, delay or defraud in the taking of the title to the real estate in the defendants, or in the taking of a certain mortgage to them, or in the purchase of the player piano either from the proceeds of said mortgage or otherwise, the complaint will be dismissed with but one bill of costs to the defendants.

*It seems,* that the statutory provisions with respect to fraudulent intent are the same in a transfer of real or personal property.

ACTION to recover an interest in real estate and the possession of a player piano on the ground that the same were disposed of with intent to hinder, delay and defraud creditors.

*Pitcher & O'Brien,* for plaintiff.

*G. S. & H. L. Hooker,* for defendants.

SMITH, J. This action is brought by the plaintiff, as trustee in bankruptcy of the defendant Charles A. Fisher, to set aside a certain deed, dated January 3, 1921, executed and delivered by Frank M. Galloway to the defendants, as tenants by the entireties, and to cancel the record thereof, on the ground that the title was so taken with intent to hinder, delay and defraud the creditors of Charles A. Fisher and was made and accepted in contemplation of the insolvency of said Charles A. Fisher, and for a decree adjudging that the plaintiff is the owner in fee and entitled to the possession of the real estate described in said deed, subject only to the inchoate right of dower therein of the defendant Inez E. Fisher.

The plaintiff also seeks a decree setting aside the presentation by the defendant Charles A. Fisher to his wife, the defendant Inez E. Fisher, of an automatic player piano as fraudulent and void and made with the intent to hinder, delay and defraud the creditors of said Charles A. Fisher and adjudging that plaintiff is the owner and entitled to the said automatic player piano.

The answer admits the execution and delivery of the deed and the presentation of the automatic player piano as alleged in the complaint, but denies all allegations of fraud and alleges the solvency of the said Charles A. Fisher at the time of the execution and delivery of said deed.

The defendants are husband and wife; from about the year of 1886 to the year of 1918 Charles A. Fisher was a tenant farmer; in 1918 he quit farming; as the result of the farming operations

he had saved about $3,400; from 1918 to January 1, 1920, he worked for several milk companies at a compensation of about $100 per month and from the last date to October 1, 1920, he worked for Heath Brothers, a copartnership, engaged at the village of Chaumont in a general feed and lumber business, at a compensation of $20 a week up to July 1, 1920, and from July 1, 1920, to October, 1920, at a compensation of $24 a week. On October 1, 1920, he purchased a one-quarter interest in the copartnership of Heath Brothers for the sum of $500; on the 1st day of January, 1921, he purchased an additional quarter interest in said copartnership for $475. On this date said defendant was worth in his own right something over $4,400, less what he owed on account of two notes, amounting to $975, given to pay for the purchase price of said one-half interest in said copartnership. On January 1, 1921, Fisher was worth approximately $3,400, aside from his interest in said copartnership for which he had paid or obligated himself to pay the sum of $975.

In November, 1920, said Fisher purchased on contract the real estate known as Galloway house and lot for the sum of $1,000, paying $50 down; on the 3d of January, 1921, he paid the balance of $950, and Galloway conveyed the property to the defendants as tenants by the entireties, by deed, duly recorded in the office of the clerk of the county of Jefferson on the day of its date.

The defendant Charles A. Fisher had among his individual assets a piece of real estate, known as the Reed house and lot, in which his wife had an inchoate right of dower. This property he sold in March, 1921, for $2,000, receiving $500 in cash and taking back a mortgage for $1,500, running to himself and wife. On the 5th day of October, 1921, said Fisher purchased the remaining one-half of the business of Heath Brothers, paying nothing therefor, except the assumption of the obligations of the copartnership. On the 22d of March, 1922, the mortgage of $1,500 on the Reed house was paid and out of the proceeds of this mortgage he paid $290 for the automatic player piano, which became the property of his wife. The balance of the proceeds of the mortgage he used in the business which he had taken over from Heath Brothers. On September 28, 1922, the defendant Charles A. Fisher was adjudicated a bankrupt by the United States District Court for the Northern District of New York.

The evidence in the case discloses no intent on the part of either of the defendants to hinder, delay or defraud the creditors, present or future, of the defendant Charles A. Fisher. In fact, the title to the Galloway house was taken in Fisher and his wife by the entirety without any such intent, and the player piano was given to his wife by said Fisher without any such intent. There

was no confusion at any time between the personal assets and accounts of Fisher and the accounts and assets of the business which was taken over by Fisher from Heath Brothers. At all times, so far as his personal assets and liabilities were concerned, Fisher was solvent. It is quite evident that until after October 5, 1921, Fisher knew little or nothing about the financial condition of Heath Brothers or of Heath & Fisher. He worked about the business but did not have charge of the finances and it is quite certain that when on October 5, 1921, he took over the business he had no real knowledge of its financial condition at that time.

The plaintiff makes much of the obligation incurred by Heath Brothers in the purchase from Charles H. Arnold of the plant which was used for the partnership business. This property had been purchased on January 1, 1919, for the sum of $6,000 on land contract which provided for principal payments at the rate of at least $81 every three months, until the sum of $2,500 should have been paid on the principal when a deed was to be given and a mortgage for $3,500 taken back. The contract also provided for the payment of interest on the balances of principal, payable quarterly at five per cent. On the 1st day of July, 1920, there was due on said contract the principal sum of $5,489.55. Thereafter payments were made on said contract as follows: October 1, 1920, $156; January 1, 1921, $156; April 1, 1921, $156; July 13, 1921, $156; October 17, 1921, $156; which amounted to a total payment on the principal of the contract of about $500, leaving due thereon something less than $5,000. On January 3, 1921, Charles H. Arnold, the seller, recognized that S. W. Heath was out of the copartnership and the defendant Fisher had taken his place, although it does not appear anywhere that Fisher himself agreed to assume the obligation on the Arnold contract until October 5, 1921. Nothing appears about the obligation of this contract which should be considered in determining the solvency of the firm of Heath Brothers or of Heath & Fisher at the time of the transactions here involved. The payments had been made as called for by the contract. There was no default. It cannot be presumed that the purchase was made for a price in excess of its value.

There is nothing in the evidence adequately to show the assets or liabilities of the firm of Heath & Fisher on the 3d of January, 1921, but the evidence in the case tends to show that at that time the firm was not insolvent or unable to pay its debts. Fisher had purchased a half interest in the business for $975; it was a going business. It appears that the principal creditor of the firm at all times was C. W. White & Son, wholesale and retail lumber

dealers of the city of Watertown, N. Y.; on the 1st of September, 1920, a month before Fisher had any interest in Heath Brothers, the firm was indebted to C. W. White & Son on balance of account in the sum of $8,346.52; during the month of September, 1920, this balance had been reduced to $5,454.82, and by the 1st of January, 1921, the balance had been reduced to $4,550.33; by February 1, 1921, the balance was $4,103.97 and continued at about this figure through the month of March, 1921; on March 31, 1921, the balance was $4,475.25. It is possible that had the business relations between Heath & Fisher and C. W. White & Son continued with this balance, there would have been no bankruptcy.

In the months of April, May, June, July and August, 1921, C. W. White & Son gave additional credit to Heath & Fisher to the amount of $10,855, after which date it would seem that they shut off all credit. Since September 1, 1920, this business had made payments on this running account amounting in the aggregate to the sum of $11,684.72. It would seem, therefore, that C. W. White & Son, the principal creditor of Heath Brothers, Heath & Fisher, and Charles A. Fisher, had no reason until after these purchases made between the months of April and August, 1921, both inclusive, to question the solvency of the firm; at least they extended this large credit. On October 5, 1921, when Fisher took over the whole interest, it would seem that he had no conception of the extent to which the liabilities of Heath & Fisher had been increased by these extraordinary purchases. Fisher was an innocent man in this whole transaction and it would seem that he is the one who has been defrauded, rather than being the one to defraud.

When he discovered the condition of his business after taking over the whole business from Heath, he did not seek to avoid any liability. His personal estate went to discharge the debts he had assumed by becoming a member of the firm. His wife had a half interest in the mortgage of $1,500 on the Reed house. This, excepting $290 paid for the automatic player piano, went into the business. He borrowed from his father $1,500 in an effort to weather the situation, and all-told, Heath seems to have escaped at the expense of the ruin of Fisher, caused by the unusual extension of credit to their business, by the principal creditor, C. W. White & Son, at a time subsequent to the transactions involved in this action. Mrs. Fisher had her inchoate right of dower in the Reed property and also in the Galloway property, and while there is no basis in the evidence for the computation of the value of this dower right, it had a value. Furthermore, if there had been any intent to hinder, delay and defraud, the deed of the Galloway

property would hardly have been taken to the defendants as tenants by the entireties. This deed was but moderate provision for the wife, not out of proportion to the assets of the husband at the time.

So far as the item of $290 for the player piano is concerned, this transaction must date as of March, 1921, when the mortgage on the Reed house was taken, running to both of the defendants, for the reason that the player piano was paid for out of the proceeds of this mortgage in which Mrs. Fisher had a one-half interest. There was no intent to hinder, delay or defraud creditors in the taking of this mortgage in the name of both. The player piano was according to the proofs paid for out of the proceeds of the mortgage on the Reed house in which Mrs. Fisher had a one-half interest; no action has been brought to set aside that mortgage or to establish a lien on it in behalf of creditors existing at the time. There was at the time the piano was delivered no actual intent to hinder, delay or defraud creditors of Charles A. Fisher. At most it was a normal act, a perfectly proper gift from a husband to wife. This would appear to be so even if the money to pay for the player piano had not come from the proceeds of the Reed mortgage in which the wife had a one-half interest. It should be borne in mind that the partnership assets were primarily liable for the payment of the partnership debts.

The plaintiff asks for a decree adjudging the Galloway deed void and canceling it from record, as made with intent to hinder, delay and defraud creditors, and that the plaintiff is the owner in fee and entitled to the possession of this property, subject to inchoate right of dower of Mrs. Fisher; he further asks a decree that the transfer of the player piano be declared void and that he is the owner and entitled to the possession thereof, and for " such other further or different relief and judgment in the premises as shall seem just and equitable."

The proofs in the case were evidently introduced upon the general theory that the action was brought to set aside transfers as fraudulent as against creditors; the case was submitted as to the Galloway lot under section 94 of the Real Property Law. Questions of such interest as to evidence and as to practice here arise that I have seen fit to review them at some length; even though under my view of the facts the discussion may be academic.

On the theory that the action could take on the nature of one to set aside a transfer as fraudulent, the question of the burden of proof and of the state of the law in this respect is of more than ordinary concern. Can a plaintiff show a voluntary transfer, that at the time thereof the transferor was indebted, and rest and thereby

throw the burden upon the transferor to show freedom from fraudulent intent, or must plaintiff affirmatively show fraudulent intent? In other words, does a voluntary transfer by one indebted raise a presumption of fraud?

In view of some recent language in the Court of Appeals we will review the law and the decisions of recent years in this state.

Section 263 of the Real Property Law reads:- " A conveyance or assignment in writing or otherwise of an estate, interest, or existing trust in real property, or the rents or profits issuing therefrom, or a charge on real property, or on the rents or profits thereof, made with the intent to hinder, delay or defraud creditors or other persons, of their lawful suits, damages, forfeitures, debts, or demands * * * is void against every person so hindered, delayed or defrauded."

Section 265 of the Real Property Law reads: " The question of fraudulent intent in a case arising under this article, shall be deemed a question of fact and not of law; and a conveyance or charge shall not be adjudged fraudulent as against creditors, purchasers or incumbrancers, solely on the ground that it was not founded on a valuable consideration."

Section 35 of the Personal Property Law reads: " Every transfer of any interest in personal property * * * made with the intent to hinder, delay or defraud creditors or other persons of their lawful suits, damages, forfeitures, debts or demands * * * is void as against every person so hindered, delayed or defrauded."

Section 37 of the Personal Property Law reads: " The question of existence of fraudulent intent in cases arising under this article is a question of fact and not of law."

Section 38 of the Personal Property Law reads: " A transfer or charge shall not be adjudged fraudulent as against creditors or purchasers solely on the ground that it was not founded on a valuable consideration."

The Real Property Law and the Personal Property Law were enacted in 1909. It would seem that the statutory provisions with respect to fraudulent intent are the same as to transfers of real estate and of personal property.

In *Kain* v. *Larkin*, 131 N. Y. 300, after citing the provision of the Revised Statutes which was identical with the provision of section 265 of the Real Property Law, the court, Chief Judge Earl writing, says: " Thus, by the express terms of the statute, it is not sufficient to condemn a conveyance of land as a fraud upon creditors that it was not founded on a valuable consideration. A person assailing such a conveyance must go further and show by other evidence that it was made with the fraudulent intent

condemned in the statute. An owner of real estate can make a voluntary settlement thereof upon his wife and children without any consideration, provided he has ample property left to satisfy all the just claims of his creditors. If the grantor remains solvent after the conveyance and has sufficient property left to satisfy all his just debts, then the conveyance, whatever his intention was, cannot be a fraud upon his existing creditors; and when a judgment creditor assails a conveyance made by the judgment debtor, he cannot cast upon the grantee the *onus* of showing good faith and of establishing that the grantor was solvent after the conveyance by simply showing that the deed was not founded upon a valuable consideration. But the person assailing the deed assumes the burden of showing that it was executed in bad faith, and that it left the grantor insolvent and without ample property to pay his existing debts and liabilities; and so it has been repeatedly held." (Citing authorities.)

In *Kerker* v. *Levy*, 206 N. Y. 109, the court said: " While we hold that the rule stated in *Smith* v. *Reid* (134 N. Y. 568) that a voluntary conveyance by one indebted at the time is presumptively fraudulent as against existing creditors is the law of this state, rather than the rule laid down in *Kain* v. *Larkin*, still we are of the opinion that the evidence in the case presented questions of fact, the determination of which by the trial court was within the power of the Appellate Division to review and reverse."

In *Ga Nun* v. *Palmer*, 216 N. Y. 603, 611, the court stated: " The rule is that a transfer without consideration by one who is then a debtor raises a presumption of fraud. The creditor may stand upon that presumption until it is repelled. It is not for him to show what other property was retained. * * * *Kain* v. *Larkin* (131 N. Y. 300) to the extent that it held to the contrary has now been overruled." Citing *Kerker* v. *Levy, supra*.

The serious question involved in the *Ga Nun* case was whether a contract made with a person since deceased was a contract as to all its provisions or testamentary in part. The case had to do with a volunteer transfer of personal property. I am unable to find any reason which would call for one rule governing voluntary transfers of personalty and a different rule governing such transfers of realty. The statutory provisions seem to be identical in this respect as to transfers of both classes of property. Speaking of transfers, the court in the *Ga Nun* case said at page 612: " Their validity turns then upon the intent with which they were given or received. If, however, there was no consideration, the fraudulent purpose, in the absence of explanation, *is an inference of law*."

Section 37 of the Personal Property Law, quoted herein, expressly

provides that the existence of fraudulent intent is a question of fact and not of law and section 38 provides that a transfer shall not be adjudged fraudulent as against creditors solely on the ground that it was not founded on a valuable consideration. I am unable, therefore, to come to any other conclusion than that the statement that where there is no consideration the fraudulent purpose is an inference of law is an inadvertence.

This statement in the *Ga Nun* case, " That a transfer without consideration by one who is then a debtor raises a presumption of fraud," constitutes such a radical departure from a long-established rule, expanding without limit constructive fraud, doing away with the necessity of proving an actual intent without which, of course, there can be no fraud, leading to such far-reaching and ridiculous consequences and revolutionizing as it does our whole conception of the integrity of human nature, that I do not feel a casual expression in an opinion should be taken as establishing the law of the state. Practically everybody who has any activity is indebted at the time of a conveyance or a transfer; under such a ruling every act of kindness, every gift at Christmas time, of an engagement ring or of a wedding present, every provision made for a wife or children or friends, becomes tainted with fraud, provided the transferor is at the time of the act indebted, and the burden is cast upon him to prove that he did not commit a fraud. This idea is abhorrent and I cannot conceive that our courts are now engaged in establishing a doctrine so foreign to our whole jurisprudence.

Holding this view and the question having been raised herein, I have felt it prudent to express these views and to analyze the decisions although the discussion is largely *obiter dicta* in this case.

In *Kain* v. *Larkin, supra,* the question was sharply defined; the subject was thoroughly discussed. The decision followed a long line of cases cited in the opinion. Earl, Ch. J., wrote the opinion, concurred in by Andrews, Finch, Peckham, Gray, O'Brien and Maynard, associate judges; the decision was rendered in March, 1892. *Smith* v. *Reid, supra,* was decided at the October, 1892, term. It was a decision of the Second Division of the Court of Appeals. There were other issues involved, which were discussed at great length. The only statement in the prevailing opinion as to the question now under consideration was " the rule is well settled that a voluntary conveyance by one indebted at the time is presumptively fraudulent." No reference is made to *Kain* v. *Larkin.*

On this question Parker, J., in a dissenting opinion, concurred in by Follett, Ch. J. (at p. 581) reviews the law as follows: " The

statute provides ' nor shall any conveyance or charge be adjudged fraudulent as against creditors or purchasers solely on the ground that it was not founded on a valuable consideration.'

" It is not true that a voluntary conveyance by one indebted at the time is presumptively fraudulent. Before the presumption can arise, it must appear that the debtor did not have other property at the time sufficient to pay his debts. As was said by this court in *Kain* v. *Larkin* (131 N. Y. 300, 307): ' When a judgment creditor assails a conveyance made by the judgment debtor, he cannot cast upon the grantee the *onus* of showing good faith and of establishing that the grantor was solvent after the conveyance by simply showing that the deed was not founded upon a valuable consideration. But the person assailing the deed assumes the burden of showing that it was executed in bad faith, and that it left the grantor insolvent and without ample property to pay his existing debts and liabilities.'

" The plaintiff did not meet the burden which the decision quoted declared rested upon him. He did not attempt to show that on November 20, 1874, Taylor did not have abundant property, aside from that conveyed, out of which to satisfy the claims of the Nassau and Germania banks, the only creditors disclosed by the record. The evidence does not demonstrate that the act complained of made him insolvent."

Again, at page 582, Judge Parker says, after citing authorities: " The cases thus referred to were cited with approval by this court in *Kain* v. *Larkin* (*supra*), and seem to be decisive of the question under consideration. It is difficult to discover any principle on which to base a distinction between *Kain's* case and this. Indeed *Kain's* case seems to command the judgment which the trial court rendered."

He then analyzes the facts in *Kain's* case and the judgment of the trial court therein, which held that the transfer was fraudulent, and then says: " This court reversed the judgment on the ground that the plaintiff did not show the defendant's financial condition at the precise time of making the conveyance."

The whole Anglo-Saxon system of jurisprudence is based upon the presumption of good faith, rather than upon the presumption of fraud in transactions; upon the assumption of the integrity of human nature, rather than upon an assumption of its vicious character. I trust that the time will never arrive that we will be forced in this state to adopt the continental view either with respect to civil or criminal proceedings.

In view of the soundness of the reasoning in the opinion in *Kain* v. *Larkin, supra,* and of the weight of that decision and of

the dissenting opinions in *Smith* v. *Reid, supra,* in which case the question does not seem to have been as squarely before the court, and of the statutory provisions, I hesitate to accept as established in this state a rule so out of harmony with our conceptions of the common law and of human nature as would be a rule that a voluntary conveyance by one indebted at the time is presumptively fraudulent. The plaintiff failed to sustain the burden which upon the general allegation rested upon him, to show that at the time of the transfers the defendant Charles A. Fisher was insolvent and that they were made with intent to hinder, delay or defraud his creditors. Fisher was personally solvent; that the copartnership was insolvent at the time does not appear; the transfers were free from fraudulent intent.

But on submission the plaintiff seeks a decree as to the Galloway lot under the provisions of section 94 of the Real Property Law. This section reads as follows: " A grant of real property for a valuable consideration, to one person, the consideration being paid by another, is presumed fraudulent as against the creditors, at that time, of the person paying the consideration, and, unless a fraudulent intent is disproved, a trust results in favor of such creditors, to an extent necessary to satisfy their just demands; but the title vests in the grantee, and no use or trust results," etc.

If the action were maintainable under this section, I would hold that the defendants have the burden of proof to overcome the presumption of fraudulent intent and that they have sustained this burden, and that the transfer was not made with intent to hinder, delay or defraud creditors.

The provision of the statute is explicit that the presumption of fraud is only in behalf of creditors *at the time* of the transfer, so that the action could in any event be maintained only on the behalf of the creditors existing at that time. There is no allegation in the complaint that there were such creditors who remained with claims unsatisfied at the time the action was commenced. The plaintiff has totally failed in the proof necessary to determine the amount of the lien, if any. He seeks to set aside transfers, not to impress a lien. If the conveyance could be set aside the title would not revert to Fisher but to Galloway. The case was tried upon the wrong theory. *Flower City Brewing Co.* v. *Edwards,* 190 App. Div. 203.

But can a trustee in bankruptcy maintain an action to establish a lien in behalf of a particular class of creditors?

It seems the settled policy of the law that a trustee in bankruptcy may bring an action to set aside a transfer of real or personal property made with the intent to hinder, delay or defraud

creditors, even where the transfer was made more than four months prior to the adjudication in bankruptcy. This he may do as representing all the creditors; the fact of the bankruptcy of itself established the exhaustion of legal remedies, a condition precedent to an application for equitable relief. *Thomas* v. *Roddy,* 122 App. Div. 851; *Allen* v. *Gray,* 201 N. Y. 504.

But in this case the action under our statute is necessarily one to impress a lien in behalf of a particular class of creditors, to wit, those of the person paying the consideration existing at the time of the voluntary transfer. Any such creditor at the time, there being no bankruptcy, would have to exhaust his legal remedy by procuring a judgment and the return of an execution unsatisfied, before seeking in equity to impress a trust; the bankruptcy of the transferor has obviated this necessity; the creditor has exhausted his legal remedy; he may not bring an action at law to collect his debt; his equitable lien, if any, exists; he could seek on behalf of himself and other creditors similarly situated for the impressment of a lien.

The Bankruptcy Act does not affect the right of a judgment creditor whose judgment was entered more than four months prior to the adjudication in bankruptcy to proceed to set aside a fraudulent transfer by his debtor. So in the case at bar the right to enforce the lien in a creditor " at the time " of the transaction became established by the adjudication of, and the establishment of the claim in bankruptcy, but the right to pursue this remedy did not pass to the trustee in bankruptcy. Section 70, subdivision e, of the Bankruptcy Act authorizes the trustee to " avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided." It does not authorize actions to impress a trust. Of course the law of the forum governing transfers controls. There is nothing in the Bankruptcy Act which authorizes a trustee in bankruptcy to maintain this sort of an action. This right remains in the creditor. *London* v. *Epstein,* 138 App. Div. 513.

A creditor in such case would have to show the fact of the bankruptcy; that he was a creditor " at the time " and that his claim was established in the Bankruptcy Court and remained unsatisfied. No decree could be entered until final distribution of assets in the bankruptcy proceedings for the reason that until all amounts collectible at law had been applied, it could not be determined for what amount a trust should be impressed.

It does not appear in this case that there is any creditor " at the time," excepting possibly Arnold, and as to him he would first have to exhaust his remedy under the land contract, for if the

property sold under the contract was adequate to satisfy the balance unpaid thereon, he would not be a creditor " at the time." As to the principal creditor, C. W. White & Son, under the rule as to the application of payments, it might well appear that every claim it had " at the time " had been fully satisfied by application of payments to earliest items of liability.

No objection to the maintenance of the action could be heard on the ground that an estate by the entirety was created. A husband cannot by investing his money in land in which title is taken to himself and his wife as tenants by the entireties prevent the transaction from being attacked as in fraud of his creditors to the same extent as any other conveyance. 13 R. C. L. 1128.

So on all grounds, that there was no intent to hinder, delay or defraud in the taking of the title to the Galloway property in the defendants, in the taking of the Reed mortgage to the defendants, in the purchase of the player piano either from the proceeds of the mortgage or otherwise, that the plaintiff is not in a position to maintain the action as to the Galloway lot, the complaint is dismissed, with one bill of costs to the defendants.

Findings of fact and conclusions of law in accordance herewith may be prepared by defendants and settled on two days' notice.

Decreed accordingly.